347 So.2d 231 (1977)
STATE of Louisiana
v.
Charles Joseph WILLIAMS.
No. 59226.
Supreme Court of Louisiana.
June 20, 1977.
*232 D. Bert Garraway, Garraway & Daigle, Baton Rouge, for defendant-respondent.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Richard Chaffin, Asst. Dist. Atty., for plaintiff-relator.
CALOGERO, Justice.
Charles Joseph Williams was charged with one count of possession with intent to distribute a controlled dangerous substance, to wit: marijuana, in violation of La.R.S. 40:966(A) and with a second count of distribution of marijuana in violation of 40:966(A), both counts arising out of the same transaction. Defendant pleaded not guilty to both counts and filed a motion to suppress physical evidence seized pursuant to an allegedly unconstitutional search of his automobile and person. After a hearing, the trial judge ruled that defendant's motion to suppress should be granted. No oral or written reasons for the ruling appear in the record. This Court granted the state's application for certiorari to consider the propriety of the trial judge's ruling. 342 So.2d 868 (La.1977)
The record of defendant's suppression hearing[1] indicates that an investigation into the defendant's activities began after Russel Milan, a narcotics officer with the Louisiana State Police received information from two reliable confidential informants who had purportedly given information which in the past had proved correct and had led to arrests and the seizure of narcotic drugs. One informant told Officer Milan that the defendant resided at the Lakeview Apartments, Building 10350, apartment *233 eight and was trafficking and distributing one pound quantities of marijuana in the Baton Rouge area. A second informant told Officer Milan on Friday, March 19, 1976, that defendant secured marijuana for distribution on trips to Austin, Texas, and that it was his normal procedure to get about twenty-five pounds there in kilos wrapped in brown paper and to cut the kilos into one pound quantities and place them in small paper bags rolled and taped. The informant further told Officer Milan that it was defendant's procedure to place the bags in a cardboard box and to deal out of the trunk of his automobile, a maroon and white Pontiac with license numbers 214 A 976. This same informant then revealed that he had personal knowledge that the defendant would be making a trip to Austin to pick up marijuana that weekend and would be leaving that day, Friday, March 19, between 5:30 p. m. and 7:30 p. m. Officer Milan and several other officers then set up a surveillance of several locations defendant frequented and they searched for the car. Defendant's car was not spotted until Monday morning at his place of employment in another parish. The officers had verified that the automobile described by the informant did, in fact, belong to the defendant. Officers Bell and White followed defendant to the Lakeside Apartments when he left work. Defendant arrived and parked about 5:20 p. m. in the complex parking lot. Officer Milan was already parked about fifty feet away and to the rear of defendant's car. From this vantage point Officer Milan observed defendant walk around the building in the direction of apartment eight. About ten minutes later he returned to the car, opened the door to the driver's side and appeared to be getting something when another car drove up and parked to the left of defendant's automobile. A man and woman got out, approached defendant and conversed with him. Defendant then opened the trunk of his own car. The male visitor peered inside and picked up two large bundles wrapped together. All three people then walked around to the driver's side of the Pontiac where defendant took out a three-inch stack of brown paper bags and then walked in the direction of apartment eight.
Officer Milan testified that from his experience and training in the packaging of narcotics (including a five-week course in the National Institute in Washington, D. C.) he was convinced that the commodity carried by the visitor from defendant's trunk was marijuana. He stated that he "caught a glimpse" of what appeared to be "green vegetable matter." At this point the officer, intending to prepare a warrant to search defendant's apartment, radioed police headquarters to learn the duty judge to whom the application for search warrant should be submitted. In the meantime, at about 6:30 p. m. the two visitors, later identified as Dennis and Rebecca McGhee, exited the apartment dwelling, apparently from apartment eight. Dennis McGhee carried a small paper bag rolled and taped and also a weighing scale which Officer Milan recognized as an instrument used in dividing quantities of narcotics. He radioed Officers Harrell and White who stopped the McGhee automobile and arrested its two occupants a short distance away. Officer Milan received word that the McGhees were found in possession of about sixteen ounces of marijuana. At 7:00 p. m. defendant left his apartment carrying an open pasteboard box full of the small bags rolled and taped. Defendant put the box down beside his trunk and picked up two garbage bags also sitting on top of the box. After getting rid of the garbage bags he opened his trunk.
Officer Milan testified that from where he was parked he had a clear view of defendant's trunk and his activities. As defendant put the box down the officer began approaching defendant from the rear. At about fifteen feet he testified that he could plainly see the contents of the box which fit the packaging method described by the informant. Defendant put the box in the trunk. When Officer Milan called to him he closed the trunk. After being instructed to open the trunk, defendant threw the trunk key into a wooded area. The police took defendant into custody and drove his car to troop headquarters. Officer Milan *234 returned to the scene, found the trunk key, and then returned to headquarters where he opened the trunk and seized twentythree pounds of marijuana.
The state argues that the search of defendant's automobile trunk was proper as a "plain view" search, the theory being that when the officers saw the cardboard box containing paper bags which, because of their experience and training they reasonably suspected to be marijuana, the contraband was in "plain view" and available for seizure without a search warrant. This argument lacks merit.
It is well established that under certain circumstances the police may seize evidence without a warrant under the theory that the object is in plain view. When a policeman has a right to be where he is and he inadvertently comes upon a piece of evidence, it would be not only inconvenient but also possibly dangerous to require him to ignore it until he obtains a warrant particularly describing it. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). But when, for example, he has a warrant to search in a given area for specified objects, and in the course of the search discovers an incriminating piece of evidence, or where he inadvertently comes across evidence while in hot pursuit, Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), he may seize it because it is in plain view. And when an object comes into a police officer's view during a properly limited search incident to arrest, the evidence may be seized when it is in plain view. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Finally, officers who are not searching at all for evidence against the accused but who inadvertently come across an incriminating object have been allowed to seize it as being in plain view. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).
In all of these cases, however, the police officer had a prior justification for an intrusion in the course of which he inadvertently came across a piece of evidence incriminating the accused. Coolidge v. New Hampshire, supra; State v. Fearn, 345 So.2d 468 (La.1977). When a viewing of evidence is planned, as was the viewing in State v. Fearn, supra, and in the instant situation, the seizure cannot be justified as one in "plain view." As was stated in State v. Fearn, supra, 345 So.2d at 471, "Plain view alone is never enough to justify a warrantless seizure." See State v. Bourg, 332 So.2d 235 (La.1976); State v. Navarro, 312 So.2d 848 (La.1975); State v. Hargiss, 288 So.2d 633 (La.1974). This argument of the state has no merit.
The issue in the case, as we see it, is whether the seizure of contraband from the automobile was properly made on the basis that the officers had probable cause to seize the marijuana and exigent circumstances made the obtaining of a warrant impracticable. State v. Lain, 347 So.2d 167; State v. Hearn, 340 So.2d 1365 (La.1976); State v. Jones, 315 So.2d 270 (La.1975); State v. Massey, 310 So.2d 557 (La.1975).
There is no question here but that the officers had probable cause to believe that the accused possessed and was distributing marijuana. The two informer tips, confirmed by their surveillance, and the apparent purchase, or receipt, of marijuana by the couple sufficiently established that the officers had probable cause to search the vehicle of the accused for contraband.
In order to reasonably search a vehicle under our law without a warrant, the situation must be under circumstances which make the obtaining of a warrant impracticable. State v. Lain, supra; State v. Hearn, supra; State v. Massey, supra. In order to justify a warrantless search of an automobile, the state must present facts which establish that "the opportunity to search is fleeting." Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).
In this case, at the time the officers approached the car and made their presence *235 known to the accused, the opportunity to search was fleeting. Although defendant's car was parked, the officers had information from an informant that the driver normally sold the marijuana from the trunk of his car, presumably while driving from place to place in it. The officers' surveillance of the accused confirmed that the accused had contraband in his trunk, and his actions in putting out his garbage and going to his trunk suggested that his leaving was imminent. At the time the officers approached the car, therefore, the opportunity to search was fleeting, and thus, there were exigent circumstances present at that time which justified a warrantless search of the trunk of defendant's vehicle.
It is strongly contended, however, that defendant's action in throwing the trunk key into the woods, the removal of the car to the police station, and the delay of the search for approximately one and one-half hours until the key was found renders the subsequent search of the trunk at the station invalid because the exigent circumstances present at the scene had dissipated and it was possible for police to secure a search warrant, once the car had been impounded and was within police control.
In our recent opinion in State v. Lain, supra, we dealt with a similar situation. There, we found that the exigent circumstances which were present at the scene would justify a later search of an automobile parked at the police station only when it was reasonable for the officer to have moved the car to a location better suited to a safe and thorough search. Specifically, we stated that:
"Under exceptional circumstances it has been held that if there is a reasonable basis for moving the vehicle from the place where it was initially stopped, and at the time of the arrest the police had the legal right to search where the police eventually searched, and a relatively short time elapses between the decision to move the vehicle to a safer location and the ultimate search, then the search is constitutional. Chambers v. Maroney, 399 U.S. 42, 52 n. 10, 90 S.Ct. 1975, 1981 n. 10, 26 L.Ed.2d 419, 429 n. 10 (1970); State v. Thomas, 310 So.2d 517 (La.1975), supra; State v. McQueen, 278 So.2d 114 (La. 1973), supra. Cf. also, Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975) (dissenting opinion). The search under these circumstances is said to be constitutional. State v. McQueen, supra."
There, we found that the late hour, the gathering of a crowd in a residential neighborhood, and the fact that police could not open the trunk without breaking into it justified the transfer of the car to a safer location where it was searched within a reasonable time.
When we apply the principles in Lain to the situation before us, we find that the transfer of the car to police headquarters was reasonable. The officers were being cautious in waiting until they had the key before searching the trunk in order to avoid breaking into it. Their waiting beside the car while the woods were searched might well have proved dangerous had the accused's confederates appeared. The only reason that they did not then have the key which would have enabled them to make an immediate search without forcing the trunk was the defendant's tossing the key into the woods. And we do not find the length of the delay before search unreasonable under these particular circumstances.[2]
For these reasons, we reverse the ruling of the trial judge granting defendant's motion to suppress, and we remand the case for trial.
SANDERS, C. J., concurs in decree.
MARCUS and DENNIS, JJ., concur.
NOTES
[1] Only the state introduced evidence at the suppression hearing; defendant Williams did not take the stand.
[2] Although this author personally believes, along with two of the other Justices of this Court, that when an automobile has been taken into police custody at a stationhouse that a search should never be authorized without a warrant even though "exigent circumstances" had existed earlier at the scene, the state of the law is otherwise. Therefore, the majority rationale in Lain has been applied here.