NORRIS, Judge.
The defendant, Jesse Ray Morton, Jr., was charged with purse snatching in violation of LSA-R.S. 14:65.1.[1] He was tried and found guilty by a six member jury. He was adjudicated a second felony offender and sentenced to eight years at hard labor. Defendant appeals his conviction and sentence contending the trial judge erred in denying his motion for continuance filed on the day of trial, in denying his motion for a mistrial, in refusing to allow him to offer evidence of his mental condi *176 tion on the date of the offense, and in levying an excessive sentence. Finding no reversible error, we affirm defendant’s conviction and sentence.
FACTS
On November 26, 1984, the defendant, admittedly in financial straits, went to the Southside Shopping Center in Shreveport, Louisiana. He observed the female victim walking toward the Best Yet Food Store with a blue purse hanging from her shoulder by a strap. The defendant ran up behind her, cut the strap with a homemade knife and fled. The victim screamed, causing several men to give chase. One of the pursuers caught the defendant, captured him and brought him and the purse back to the front of the store. The police were called to the scene and arrested the defendant. After being advised of his Miranda rights, defendant gave a recorded statement in which he admitted committing the crime. At trial, the defendant was positively identified by the victim and several witnesses at the scene and his confession was admitted into evidence. The jury’s verdict was guilty and defendant, after being adjudicated a second felony offender, was sentenced to eight years at hard labor.
Defendant appealed, originally assigning sixteen errors. However, he briefed only four on appeal. Assignments of error not briefed or argued in brief are considered abandoned. URCA-Rule 2-12.4; State v. Williams, 338 So.2d 672 (La.1976).
ASSIGNMENT OF ERROR NO. 3
In this assignment, the defendant contends the trial court erred by denying his motion for continuance filed on the day his trial was to begin, February 25, 1985. Defendant was arrested November 26, 1984 and charged by bill of information filed December 20, 1984. Defendant’s first court appearance was November 27, 1984, when the indigent defender’s office was appointed to represent him. A motion for discovery was filed December 11, 1984, in which defendant requested that the district attorney disclose to him “all exculpatory evidence in his possession, custody, control or knowledge.” A preliminary examination was held December 17, 1984, and probable cause was found. On December 20, 1984, defendant appeared in court with trial counsel and pled not guilty. The state responded to defendant's motion for discovery and filed a notice under LSA-C. Cr.P. art. 768. Defendant filed a motion to suppress on January 17, 1985. The hearing on this motion was held January 30, 1985; the motion was denied and the case was set for trial on February 25, 1985.
On the morning of trial, defense counsel filed a motion for continuance alleging that:
(a) On February 24, 1985, defense counsel learned that approximately two months prior to the date of the motion, defendant attempted suicide; that this attempted suicide appears to be Brady information and defense counsel was not informed of the incident by the district attorney’s office or any of its agents;
(b) That defense counsel has medical records showing that defendant has been treated for mental illness at the LSU Medical Center, Brentwood Hu-mana Hospital, Schumpert Medical Center and Central Louisiana State Hospital (the date defense counsel first obtained this evidence is not set forth in the motion);
(c) Defense counsel has increasingly noted that defendant appears to suffer from a serious psychological disorder symptom known as “looseness of association of thought” which has increasingly impaired defendant’s ability to assist defense counsel in his criminal defense;
(d) In light of defendant’s mental illness history, his apparent looseness of thought association and his recent suicide attempt, defense counsel is compelled to move for a trial continuance in order to have a sanity commission evaluate defendant and in order to allow defense counsel to enter a plea of *177 not guilty by reason of insanity for defendant, (emphasis supplied)
The motion prayed only for a continuance; it did not move for an appointment of a sanity commission nor did defense counsel request permission to enter an insanity plea. Furthermore, defense counsel offered absolutely no evidence to corroborate the allegations contained in his motion. The trial judge denied the motion for continuance and the case proceeded to trial. Defendant immediately applied for writs to this court and we denied the application concluding that defendant’s showing evidenced no abuse of discretion.
Defendant now contends the denial of the continuance amounts to reversible error because the state violated its duty under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to promptly notify defense counsel about the suicide attempt. Defendant also urges that his motion presented substantial grounds to warrant the appointment of a sanity commission.
On appeal, based on this record, we see no reason to reverse our prior disposition.
LSA-C.Cr.P. art. 712 commits a motion for a continuance to the sound discretion of the trial judge. We will not reverse his ruling except upon a showing that he abused his discretion and that defendant suffered prejudice as a result. State v. Knighton, 436 So.2d 1141 (La.1983).
The state may not suppress evidence that is favorable to the defendant and material to guilt or punishment when that evidence is requested by the defendant. Brady v. Maryland, supra; U.S. v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); State ex rel Clark v. Marullo, 352 So.2d 223 (La.1977). The proper standard for materiality where, as here, only a general request for exculpatory evidence has been made, is whether the omitted evidence, when considered in the context of the full record, creates a reasonable doubt about guilt which did not exist otherwise. U.S. v. Agurs, supra.
There is no evidence in this record to indicate, nor does defendant contend, that the state was aware or should have been aware that defendant suffered from any learning disability, mental defect or mental illness. Defendant had not pled the insanity defense and the defense had not furnished the state the notice contemplated by LSA-C.Cr.P. art. 726. Therefore, prior to the filing of the motion for continuance, the state could not have been aware that the attempted suicide might have remotely been construed as Brady material. Thus the state was not at fault for failing to reveal the incident to the defense. Moreover, the defense certainly had equal access to this information as did the state. State v. Davis, 385 So.2d 193 (La.1980).
Finally, assuming without holding that the suicide attempt could somehow be considered Brady material, we conclude that the suicide attempt could in no way create, in the context of this full record, a reasonable doubt about defendant’s guilt which did not exist before. Defendant’s statement, his flight after committing the crime and his testimony at trial all conclusively show that he was capable of distinguishing right from wrong with reference to the conduct in question. LSA-R.S. 14:14. It was not error for the trial judge to refuse to grant the continuance on the basis of the Brady argument.
The trial court is required to order a mental examination of a defendant only when it has reasonable ground to doubt the defendant’s mental capacity to proceed and when it is presented with evidence that supports a need to appoint a sanity commission. The ordering of a mental examination as to defendant’s present capacity to proceed rests in the sound discretion of the court. LSA-C.Cr.P. art. 643; State v. Charles, 450 So.2d 1287 (La.1984); State v. Shields, 444 So.2d 287 (La.App. 1st Cir.1983), writ denied 446 So.2d 312 (La.1984).
Defendant pled a simple not guilty plea and maintained it throughout trial despite knowledge of evidence that might have been consistent with an insanity plea. *178 Long before trial, the defense had possession of letters concerning defendant’s mental treatment in hospitals; defendant’s last visit to a mental hospital was in July of 1980. Defense counsel further alleged that he had increasingly noticed that defendant appeared to suffer from a serious psychological disorder he termed “looseness of association of thought” which increasingly impaired defendant’s ability to assist counsel in his defense. The motion for continuance does not allege that any of this information had just been discovered. Defense counsel suggested in argument that this information about defendant’s mental history did not bloom into a possible insanity defense until he learned of the suicide attempt. We further note that the motion for continuance does not allege that defendant was mentally incompetent to proceed but only suggests that his ability to assist his counsel has been impaired. He offered no evidence whatsoever to substantiate the allegations of the motion for continuance on this basis. The defense requested neither the appointment of a sanity commission nor the permission to change defendant’s plea to not guilty by reason of insanity.
Based on this record, we conclude that it was within the capability of the defense to develop evidence on a defense of insanity, if such existed, well in advance of the trial date. Obviously, no such effort was made and the trial judge was certainly not unreasonable in concluding that the motion for continuance was nothing more than a dilatory tactic. Considering all the facts and circumstances of this case, we cannot conclude that the trial judge abused his discretion in denying the continuance on this ground. State v. Shields, supra.
Our thorough review of this record leads us to conclude that the trial judge did not abuse his discretion in denying the motion for continuance and that defendant suffered no prejudice as a result of this ruling. State v. Knighton, supra.
This assignment presents no reversible error.
ASSIGNMENT OF ERROR NO. 4
In this assignment, defendant contends the trial court erred by denying his motion for mistrial based on the prosecutor’s alleged violation of LSA-C.Cr.P. art. 770(3).[2] The alleged violation occurred during voir dire examination of prospective juror Merllees Leatherman.[3] During the *179 questioning, Mrs. Leatherman expressed the opinion that a defendant had to prove his innocence. The state attempted to further inquire about the prospective juror’s belief on this point. The inquiry produced the response that the juror would not expect the defendant to prove his innocence if the state failed to prove guilt beyond a reasonable doubt. The prosecutor then asked the juror if she would find the defendant guilty if the state proved guilt beyond a reasonable doubt by uncontradict-ed evidence. She replied in the affirmative. Then, the state asked if it was at this point that she would expect the defendant to come forward with evidence to rebut the state’s beyond a reasonable doubt proof. She replied yes.
Admittedly, the prosecutor’s questions were inartfully propounded in part. The reference should have been to the defense putting on evidence to rebut rather than expecting “him to take the stand.” However, we do not consider the state’s questions to be a direct or indirect reference to this defendant’s failure to testify in his own behalf. Our careful scrutiny convinces us that the questions asked by the state were intended to instruct the prospective juror that the state had the burden of proving defendant’s guilt beyond a reasonable doubt, regardless of whether the defendant presented any evidence, and the defense need only present evidence in rebuttal when the state had presented uncon-tradicted evidence sufficient to prove guilt beyond a reasonable doubt. We do not feel that the average juror would have inferred from this line of questioning a reference to this defendant’s failure to testify in this case. See State v. Shea, 421 So.2d 200 (La.1982), rev’d on other grounds, 470 U.S. — 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985); State v. Willie, 410 So.2d 1019 (La.1982), cert. denied, 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 723 (1984).
Finally, in order to mandate a mistrial under 770(3), the alleged indirect reference must be intended to draw the attention of the jury to the defendant’s failure to testify in his behalf. State v. Curry, 390 So.2d 506 (La.1980); State v. Johnson, 426 So.2d 95 (La.1983). Here, as even the defense admits, the state did not intend to draw attention to defendant’s failure to testify or present evidence.
This assignment does not constitute reversible error.
ASSIGNMENT OF ERROR NO. 7
In this assignment, defense urges us to conclude the trial court committed reversible error by sustaining the state’s objection to testimony concerning the defendant’s state of mind or mental condition generally and specifically at the time of the offense and at the time defendant gave his recorded statement. Both occurred on the same date. Defendant admits that he was attempting to show by the disallowed evidence that because of a mental illness or defect he could not have possessed the necessary criminal intent to be guilty of purse snatching.
Evidence of a mental condition or defect is inadmissible when the defendant failed to plead not guilty and not guilty by reason of insanity. LSA-C.Cr.P. art. 651; State v. Lecompte, 371 So.2d 239 (La.1979); State v. Edwards, 420 So.2d 663 (La.1982). By virtue of article 651 and our substantive law, a mental defect or disorder, short of legal insanity (i.e., the incapability to distinguish between right and wrong), cannot serve to negate the requisite specific intent nor reduce the degree of the crime. State v. Rideau, 249 La. 1111, 193 So.2d 264 (1966), cert. denied 389 U.S. 861, 88 S. Ct. 113, 19 L.Ed.2d 128 (1967). See also State v. Wade, 375 So.2d 97 (La.1979), cert. denied 445 U.S. 971, 100 S.Ct. 1665, 64 L.Ed.2d 249 (1980). Furthermore, LSA-C. Cr.P. art. 726A requires notice to the state by a defendant if “[he] intends to introduce testimony relating to a mental disease, defect, or other condition bearing upon the *180 issue of whether he had the mental state required for the offense charged.” The purpose of the notice requirement of article 726A is merely to require discovery of the intent to use such evidence when admissible (after a plea of insanity), not to provide substantively for its admissibility on the issue of specific intent. State v. Wade, supra.
In the instant case, defendant’s only plea to the charge was not guilty. Even in light of the information concerning defendant’s mental history available to the defense pri- or to trial, it made no effort to plead not guilty and not guilty by reason of insanity other than an indirect effort by way of the unsupported allegations contained in the motion for continuance. Defendant also failed to furnish the state timely or attempt to furnish untimely the notice required by LSA-C.Cr.P. art. 726A. Moreover, the defendant’s recorded statement, his attempted escape from the scene of the crime and his testimony at trial completely belie any substantive insanity or intoxication defense.
The trial judge did not commit error in refusing to allow testimony pertaining to defendant’s alleged learning disability, mental defect or mental condition. This assignment lacks substance.
ASSIGNMENT OF ERROR NO. 16
This last assignment of error complains that defendant's sentence was excessive. A sentence is constitutionally excessive in violation of Louisiana Constitution of 1974 Art. I, Sec. 20 if the sentence is grossly out of proportion to the severity of the offense and nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir.1983), writ denied 438 So.2d 1112 (La.1983).
A sentencing judge is given wide discretion in imposing sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir.1983); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983), writ denied 439 So.2d 1074 (La.1983).
The sentencing guidelines of LSA-C. Cr.P. art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied 435 So.2d 438 (La.1983). It is not necessary that the trial judge articulate every aggravating and mitigating circumstance outlined in article 894.1. However, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, supra.
The crime of purse snatching is punishable by imprisonment, with or without hard labor, for not less than two years and for not more than 20 years. LSA-R.S. 14:65.-1B. This defendant was adjudicated a second felony offender. Thus, the sentence imposed cannot be less than one-third the longest term and not more than twice the longest term prescribed for a first conviction. LSA-R.S. 15:529.1A(2). Therefore, this defendant was required by law to serve a minimum of six and two-third years and faced a maximum sentence of 40 years.
The sentence imposed was eight years at hard labor. Our review of the record convinces us that the trial judge sufficiently articulated facts to support the sentence. First, the trial judge noted that defendant was not eligible for a suspended sentence because he was a second felony offender. Furthermore, the trial judge considered defendant’s marital status and his young child. While the sentence would work some hardship on defendant’s family, the trial judge did not feel that it would amount to what the law terms “excessive hardship.” The trial judge also considered defendant’s learning disability and his occasional drug use. Further, defendant had been hospitalized due to mental problems and he informed his attorney that on the date of the offense he had consumed some *181 beer and a quaalude. The trial judge also mentioned that this crime was committed while the defendant was on probation, thus making another probationary or suspended sentence unduly risky, especially in light of the confession, in which defendant said he committed the crime because he needed money. Moreover, the trial judge found that the defendant was in need of custodial environment where he could obtain training in a trade and receive other counseling. The crime committed threatened serious harm because defendant had a knife and, while he did not intend to use the knife to harm the victim, the victim or any witness could have perceived a threat and reacted in such a manner that could have resulted in serious harm. In addition, the defendant was not under strong provocation in that financial pressures do not justify crime. Likewise, the victim did not facilitate or induce commission of the crime.
Since the defendant received a sentence only 1½ years above the minimum allowed and for the reasons articulated by the trial judge, the sentence is not excessive. It does not amount to a needless and purposeless imposition of pain and suffering.
This assignment of error lacks substance.
MOTION TO REMOVE ATTORNEY OF RECORD
After this appeal was filed, briefed and argued, the defendant filed a motion to remove Mr. Hiller as attorney of record and to proceed in proper person. The essence of his complaint is that Mr. Hiller did not represent him at trial and is therfore not familiar enough with the facts of the case to prosecute the appeal competently. Both attorneys are members of the indigent defender’s office which was appointed to Mr. Morton’s defense. We cannot see, however, anything in the record to substantiate the claim of ineffective assistance of appellate counsel. Mr. Hiller had the complete trial transcript at his disposal and he filed a comprehensive brief. Mr. Morton has not specified any acts or omissions related to the change of counsel for appeal, other than to say that Mr. Hiller did “not have his best interest at heart,” and we can find none. Consequently the motion to remove the attorney of record is denied.
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.

. § 65.1. Purse snatching
A. Purse snatching is the theft of anything of value contained within a purse or wallet at the time of the theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon.
B. Whoever commits the crime of purse snatching shall be imprisoned, with or without hard labor, for not less than two years or for not more than 20 years.

. Art. 770. Prejudicial remark; basis of mistrial
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to;
******
(3) The failure of the defendant to testify in his own defense; * * *

. The complained of exchange occurs on pp. 167 and 168 of the transcript and is as follows:
[[Image here]]
Q. Now I’ll ask you some of the general questions that we’ve been talking about as I have previously explained, reasonable doubt. The State has the total burden of proof. The defendant is presumed innocent and as I explained earlier that test basically is applying your common sense and your common experience that you have throughout life and if you have doubt with a reason then you must find the defendant not guilty but if you feel that the State has proven the elements of the crime and that the defendant did it beyond a reasonable doubt, you must find him guilty as charged. Is there any problem with that Ms. Duddleston?
A. (By Mrs. Duddleston) No.
Q. Ms. Leatherman?
A. (By Ms. Leatherman) I believe that its two sides. I believe the State has to prove that he’s guilty. I believe that the defendant has to prove innocence. I realize what the question —I’m explaining it the way I see it. I do know — I do understand that the burden of proof lies with the State but in my own mind this is the way I feel.
Q. Okay. Now getting to that point, in regard to the burden of proof, if the State — taking the negative aspect of it. If the State does not prove the defendant guilty beyond a reasonable doubt would you still expect the defendant to prove his innocence?
A. (By Ms. Leatherman) If you did not prove he was guilty then I could not say that he was.
Q. Now, going back to the positive aspect. If we proved in your mind that he was guilty beyond a reasonable doubt in that instance, if it was uncontradicted whatsoever, would you still find the defendant guilty beyond a reasonable doubt?
A. (By Ms. Leatherman) Yes.
*179 Q. And likewise you would expect him to take the stand and attempt to rebut that proof beyond a reasonable doubt?
A. (By Ms. Leatherman) Yes.