750 So.2d 321 (1999)
STATE of Louisiana, Appellee,
v.
Jesse A. NORMANDIN, Appellant.
No. 32,927-KA.
Court of Appeal of Louisiana, Second Circuit.
December 22, 1999.
*323 John M. Lawrence, James R. Phillips, Indigent Defender Board, Counsel for Appellant.
Richard Ieyoub, Attorney General, James M. Bullers, District Attorney, Randall Smith, Assistant District Attorney, Counsel for Appellee.
Before BROWN, WILLIAMS and GASKINS, JJ.
BROWN, J.
Defendant, Jesse Normandin, was convicted by a jury of four counts of simple burglary, violations of La. R.S. 14:62, and one count of felony theft, a violation of La. R.S. 14:67. He was adjudicated a second felony offender and sentenced to six years at hard labor on each count of simple burglary and five years on the felony theft count, all to run consecutively. Defendant has appealed. For the reasons stated herein, we affirm.

FACTS
In the early morning hours of Sunday, October 31, 1997, Devon Jetton and Kenneth Skaggs were arrested by the Bossier Police for vehicle burglary. Thereafter, Detectives Thomas Delrie and Robert McArthur of the Bossier City Police Department spoke with the two men about several recent vehicle burglaries in the area.[1] After the discussion, Skaggs led the detectives to a house on St. Vincent Avenue in Shreveport. The detectives arrived at the house at approximately 7:30 a.m. While it is unclear as to who allowed them to enter the house, once inside the officers informed everyone of their Miranda rights.[2] At the time, the house was occupied by Troy Twigg, defendant and two females. Thereafter, Twigg, a lessee, signed a consent to search form. During their search, the detectives found several items which had been taken in the recent vehicle burglaries in Bossier Parish. Defendant and Twigg then accompanied the detectives back to Bossier City and were placed in separate interrogation rooms. Later in the day, defendant made two separate statements in which he implicated himself. Immediately thereafter, he was arrested.
Defendant was subsequently convicted of four counts of burglary and one count of felony theft. The state filed a multiple offender bill of information and defendant was adjudicated a second felony offender. Thereafter, defendant was sentenced to six years at hard labor and fined $1,000 for each of the four counts of simple burglary with the sentences to be served consecutively and five years for felony theft, also to be served consecutively with any other sentence. Defendant has appealed his convictions and sentences. We affirm.

*324 DISCUSSION

I. Sufficiency of the Evidence
Defendant argues that the evidence adduced at trial was insufficient to support his convictions of simple burglary and felony theft.
According to defendant, the state did not prove that he was a principal to the vehicle burglaries. He argues that the statements in which he implicated himself in the burglaries and the theft were not admissible. Therefore, without the statements there was not sufficient evidence to implicate him in the crimes.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The victims of the car burglaries and theft testified that their vehicles were entered without consent and that the items taken were valued at more than $1200. The state showed by the victims' testimony that their vehicles were entered without their permission and that items were taken or attempted to be taken. The victim of the theft testified that the value of the items stolen was more than $1,200. Skaggs testified that he and defendant participated in the burglaries in Counts One through Four. Defendant's admissions provide sufficient proof of his entering the vehicles and taking the property on all counts of burglary. His statements also provide proof of his intent to commit the theft and the completed act.

II. Voluntariness of defendant's statements
Defendant argues that the trial court erred by not suppressing the inculpatory statements he made to the police as they were not voluntary.
The record shows that defendant made two statements to Detective Delrie on October 31, 1997, implicating himself in the burglaries and theft. Defendant again confessed to the burglaries on November 3, 1997, when he gave a statement to Deputy Staton of the Bossier Parish Sheriff's Office.
After an evidentiary hearing, the trial court found that defendant's statements were voluntary and not the product of an illegal search.
In reviewing evidentiary rulings, the reviewing court should give deference to the trial court if the ruling is reasonably supported by evidence. Further the reviewing court can use all of the evidence presented at the evidentiary hearing and the trial to review the determination. State v. Fisher, 97-1133 (La.09/09/98), 720 So.2d 1179.

A. Warrantless Search and Seizure
A search without a warrant is unreasonable unless an exception applies. Consent is one of the well-established exceptions. The state must prove the consent was free and voluntary. State v. Owen, 453 So.2d 1202 (La.1984). In the context of a premises search, generally consent must be given by one having mutual use of the premises. However, a search may be valid even when the person giving the consent is without authority, if the facts as presented to the police justify the officer's reasonable belief that the person had authority over the premises. Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); State v. Edwards, 97-1797 (La.07/02/99), 750 So.2d 893, U.S. cert. denied, ___ U.S. ___, 120 S.Ct. 542, 145 L.Ed.2d 421 (U.S.La.11/29/99) (No. 99-6418).
*325 Detective Delrie testified that he and Detective McArthur knocked on the door and defendant answered. After the officers explained that they wanted to talk to him, defendant allowed them to enter. Detective McArthur testified that one of the girls staying at the house answered the door and let them enter. Defendant and Twigg testified that they were asleep with their respective female companion in the same locked bedroom in separate beds when the detectives knocked on the bedroom door. Both detectives testified that immediately after their arrival, everyone was informed of their Miranda rights. Twigg then signed a consent form and gave the detectives permission to search the house. The search revealed several stolen items that were connected to the recent car burglaries.
While there does seem to be some confusion as to who let the detectives into the house, the testimony is clear that the police did not force their way into the dwelling. The record indicates that it was someone staying in the house that night who granted access to the house. Further, the detectives read everyone their Miranda rights and thereafter, Twigg gave written consent to search the house. There was no indication that Twigg was placed under duress or coercion prior to consenting. There was also no evidence that any search was conducted prior to the consent. We find that the trial court was correct in determining that the search was voluntary and valid.

B. Illegal Arrest
Defendant next claims that his statements are the product of an illegal arrest and therefore should not have been admitted. He argues that he was illegally arrested because the detectives made a warrantless entry into the house and discovered the evidence of the burglaries, further claiming that the illegal arrest was perpetuated by the fact that he was handcuffed and forced to accompany the detectives back to Bossier.
The state, on the other hand, contends that the police did not arrest defendant until after he gave his statements at the Bossier City police station implicating himself in the crimes. The state contends that defendant voluntarily accompanied the police to the station.
To constitute an arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him. La.C.Cr.P. art. 201. To determine whether an arrest was made, one must look at the totality of the circumstances. The test is whether there was an intent to impose restraint and whether a reasonable person would consider himself free from restraint. State v. Fisher, supra.
The officers invited defendant and the others to accompany them to Bossier City to talk about the burglaries. Detectives Delrie and McArthur testified that no one was ever handcuffed and that they were free to leave at any time. Also, both detectives testified that defendant verbally waived his Miranda rights and agreed to go with them to Bossier City to talk. However, defendant testified that he was handcuffed and not free to leave the house or the police station. Twigg stated that he thought that he and defendant were handcuffed but stated that he was not certain.
As there was conflicting testimony, the trial court was forced to make a credibility determination in order to rule on this matter. There was testimony that defendant agreed to go with the officers. Both detectives testified that he was not handcuffed and was free to leave. There was no evidence that defendant was coerced in any way to accompany the officers. There also was no testimony of threats. Admittedly there was some contradictory testimony; however, it is the trial court and not the reviewing court that determines credibility. State v. White, 27,188 (La.App.2d Cir.08/23/95), 660 *326 So.2d 515. Therefore, we do not find that the trial court erred.

C. Standing to Challenge Warrantless Search
Defendant next argues that the trial court erred when it stated that he did not have standing to challenge the search. Because the trial court correctly ruled that a valid consent was given to the detectives by Twigg, defendant's argument is moot.

D. Coercion
Defendant next argues that the trial court erred in allowing his inculpatory statements into evidence because they were not free and voluntary. He feels that he was coerced into giving a statement because he was placed in an interrogation room for a lengthy period of time without food, water or access to a bathroom and told that he could not leave until he gave a statement. He argues that this treatment put him under duress and made his statement involuntary.
For an inculpatory statement to be admissible it must be shown to have been freely and voluntarily given. State v. Rogers, 476 So.2d 942 (La.App. 2d Cir. 1985).
The record indicates that defendant arrived at the Bossier City Police Department between 7:30 a.m. and 8:20 a.m. He was read his Miranda rights at 8:20 a.m. and soon thereafter placed in an interrogation room. Defendant's statements were taken at approximately 3:00 p.m. and 3:07 p.m. Detective Delrie testified that the reason for the delay was because there were other witnesses to talk to first. Detective Delrie further testified that defendant was not handcuffed during this time and was free to leave. Both detectives stated that they were not sure if defendant was fed or allowed to use the restroom, but to do so was normal procedure.
As to the statements themselves, defendant was Mirandized at least twice; once at the house and then immediately prior to giving the statements. After he gave the statements he was asked if they were free and voluntary and he stated that they were. Detective Delrie testified that no force or coercion was used.
Defendant provided little information concerning his claim that someone entered the room and told him that he had to give a statement. Defendant could not identify the person. Further, his testimony on this issue consisted of only his claim that someone came into the room. Based upon this, it was reasonable for the trial court to give little weight to defendant's allegations.
The evidence supports the trial judge's determination that the statements were voluntary. The facts do not indicate that food, water or restroom use were withheld intentionally. Further, the evidence is clear that defendant was properly Mirandized twice and that he stated in his statements that they were voluntarily given. The evidence supports the trial court's decision and the trial court did not err in admitting the statements.
Defendant also argues that his statement to Deputy Stanton was involuntary. Deputy Stanton testified that he met with defendant several days after his arrest and that after he informed him of his rights, defendant gave a statement. Deputy Stanton also testified that no coercion or duress was used in procuring the statement. There was no evidence presented that the statement was involuntary. The trial court was correct in finding this statement to be voluntary.

III. Multiple Offender-Error Patent
Defendant argues that the trial court erred in finding him to be a second felony offender because he was not informed of his constitutional rights at the multiple bill arraignment. Further, defendant argues that the trial court imposed an illegal multiple bill sentence by enhancing each count as a multiple bill sentence.
Defendant failed to brief his allegation that he was not informed of his *327 rights prior to admitting to his identity in the habitual offender hearing. An issue not briefed may be considered abandoned by the court. Knotts v. Snelling Temporaries, 27,773 (La.App.2d Cir.12/06/95), 665 So.2d 657. However, we find that the court did inform defendant of his rights. In reviewing the colloquy, we note that defendant was informed of his right to a hearing, his right to confront witnesses, his right to avoid self-incrimination, and his sentencing exposure.
Defendant also argues that the trial court erred when it found him to be a second felony offender on each count of burglary and felony theft. He argues that State ex rel. Mims v. Butler, 601 So.2d 649 (La.1992), prohibits multiple offender adjudication from convictions received on the same day.
The trial court found that defendant was convicted of felony unauthorized use of a movable on August 2, 1996. The court used that predicate felony to adjudicate him a second felony offender on each of his present convictions and enhanced each count.
State ex rel. Mims, supra, concerned a defendant who was convicted of two felonies on November 11, 1979. Several years later, on January 12, 1985, he was convicted of second degree battery and purse snatching. The trial court counted all of the felonies and adjudicated him a fourth felony offender. The supreme court found this was incorrect and held that convictions which occur on the same day, when used as the predicate conviction, can only be counted as one conviction. Therefore, Mims could be found a second felony offender on the second degree battery conviction and purse snatching conviction, but not a third or fourth felony offender.
The trial court used defendant's conviction for unauthorized use of a moveable as the predicate offense and applied this predicate to each individual burglary and theft conviction. It then adjudicated defendant a second felony offender on each of the five current convictions. This was proper under State ex rel. Mims.

IV. Excessive Sentence
Defendant argues that the trial court erred by imposing a constitutionally excessive sentence. According to defendant, his sentence is excessive because the trial court stacked his convictions. He also argues the trial court failed to consider his age and personal history.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.04/02/97), 691 So.2d 864.
It is within a trial court's discretion, however, to order sentences to run consecutively rather than concurrently. Moreover, where the convictions stem from separate incidents involving different victims and occur over a lengthy period of time, the resulting consecutive penalties will not be found to be an abuse of that discretion.
State v. McCray, 28,531 (La.App.2d Cir.08/21/96), 679 So.2d 543 (citations omitted).
Defendant was sentenced to six years at hard labor on each of Counts One through Four and five years at hard labor on Count Seven and fined $1000 on each conviction. As required by La.C.Cr.P. art. 894.1, the trial court discussed the factors on which he based these sentences. The court found that defendant was in need of incarceration and showed no remorse. He found that defendant had a lengthy criminal background and that prior to these convictions, he had pled guilty to felony *328 unauthorized use of a movable. In fact, defendant was still on probation for this felony at the time of his current criminal activity. At the time of trial defendant had a residential burglary and theft of property charge pending in Texas. He also had two counts of armed robbery pending in Bossier Parish. In 1994, as a juvenile, defendant was convicted of four counts of simple burglary and adjudicated delinquent.
Defendant argues that the court placed too much emphasis on his past criminal history and failed to consider his age and personal history. However, there is no requirement that specific matters be given any particular weight. State v. Berry, 29,945 (La.App.2d Cir.10/29/97), 702 So.2d 33; State v. Callahan, 29,351 (La. App.2d Cir.02/26/97), 690 So.2d 864, writ denied, 97-0705 (La.09/26/97), 701 So.2d 979. We further note that defendant did not offer any evidence to rebut his extensive criminal history.
In light of defendant's extensive and continuous criminal history, the trial court did not abuse its discretion in imposing consecutive sentences and the sentences do not shock one's sense of justice.

CONCLUSION
For the reasons stated above, defendant's convictions and sentence are affirmed.
NOTES
[1] No details of this discussion were given at trial.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).