828 So.2d 124 (2002)
STATE of Louisiana, Plaintiff-Appellee,
v.
Willie Ray SHED, Jr., Defendant-Appellant.
No. 36,321-KA.
Court of Appeal of Louisiana, Second Circuit.
September 18, 2002.
*126 Paula Corley Marx, Lafayette, for Defendant-Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, J. Thomas Butler, Edward M. Brossette, Assistant District Attorneys, for Plaintiff-Appellee.
Before PEATROSS, DREW and HARRISON (Pro Tempore), JJ.
HARRISON, Judge Pro Tempore.
Willie Ray Shed appeals his conviction of possession of a firearm by a convicted felon; he also appeals his sentence of ten years at hard labor without benefit of probation, parole, or suspension of sentence, and to pay a fine of $1,000.00 and court costs or serve 100 days in the parish jail from the First Judicial District Court, Parish of Caddo. For the reasons set forth below, we affirm the conviction and sentence.

Facts
In 1994, Shed was convicted of three counts of distribution of cocaine. In conjunction with his supervision and first *127 offender probation, the defendant was informed that he was not to possess firearms, either on his person or in his home.
Around 9:00 pm on January 2, 2001, several Shreveport police officers arrived at Shed's house, pursuant to citizen complaints about illegal drug activity. The officers, who were dressed in black pants and black t-shirts with "Shreveport Police" written in white lettering across the front, executed an operation commonly referred to as a "knock and talk." Agent Jason Brook testified that when he and Agent Jerry Oglee knocked on Shed's door, Clarence Lee answered the door. Lee informed the police that he was not the homeowner, invited the officers inside, and told them that he would go get the homeowner, who was in the back of the house. Upon stepping inside the kitchen, the officers saw in plain view a small white plate on top of the washing machine; the plate contained two razor blades and what appeared to be crack cocaine. The officers then detained and handcuffed Lee.
As the officers were talking with Lee, Shed came to the kitchen and said he was the homeowner. The officers advised Shed that they were there to investigate reports of illegal drug activity and that they had already seen narcotics inside the residence. Shed remarked that there was "more dope" in the kitchen cabinet. At that time, the officers secured the residence, making sure that there was no one else inside, and performed a security sweep for weapons. When asked by an officer, Shed admitted that he had a .40 caliber gun in his pocket. After the officers recovered the drugs from the top of the washing machine and the kitchen cabinet, and the handgun from Shed's person, Shed told the officers they could not continue to search his residence. The officers then obtained a search warrant and returned to complete the search.
In addition to the gun Shed was carrying, the police recovered ammunition and four other guns: a .45 caliber derringer style handgun, a .25 caliber semiautomatic pistol, a .25 caliber handgun, and a .357 revolver. The police also recovered some scales, cash and slightly over four grams of cocaine from Shed's home. At that time. Shed admitted to the police that he owned all the drugs and guns found in the house.
Shed was charged by bill of information with possession of a firearm by a convicted felon, La. R.S. 14:95.1. Shed filed a motion in limine to exclude the introduction of any evidence of drugs found at the scene. Following a hearing, this motion was denied.
At Shed's jury trial, the officers involved testified regarding the facts related above. Shed testified on his own behalf. He related that he heard a door slam and seconds later he heard somebody beating on the door. Shed stated that he grabbed his wife's pistol (the .40 caliber) and put it in his pocket and went to see what was happening. When he saw the police, he put his hands in the air. Shed also told of previous incidents of break-ins at his home. When asked about the various guns seized from his home, Shed insinuated that they belonged to his wife and two teenage sons. Shed's wife, Patricia, testified that she owned two of the guns that were seized from the house, a .45 caliber and a .40 caliber, and produced a receipt for the .45 caliber handgun.
On August 8, 2001, a jury found Shed guilty of possession of a firearm by a convicted felon. Shed filed motions for post verdict judgment of acquittal and new trial. These motions were denied.
Shed appeals and asserts the following assignments of error: the evidence was insufficient because his possession was justified, *128 a mistrial should have been granted due to a prosecutor's comment made during voir dire, and his trial counsel was constitutionally ineffective.

Discussion-Sufficiency of the Evidence
Shed argues as his first assignment of error that there was insufficient evidence to support his conviction of illegal possession of a firearm by a convicted felon. He does not dispute that he was a convicted felon who possessed a firearm within ten years of his prior conviction. Instead, he maintains that his conduct was justified under La. R.S. 14:18. Shed asserts that, upon hearing the loud beating at his door, coupled with his recent history of burglaries at his home, he was justified in grabbing his wife's pistol in an effort to defend himself and his property. He argues that his actions were reasonable in defense of persons or property.
The state responds that Shed had not only a gun in his pocket when he met the police at the door, but also constructive possession of four other weapons in the house. It also argues there was no showing of imminent peril, and that Shed referred to the gun as "his weapon" during testimony.
Shed properly raised the issue of sufficiency of the evidence in the trial court by motion for post verdict judgment of acquittal, which was denied by the trial court. La.C.Cr.P. art. 821.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
To prove the illegal possession of a firearm by a convicted felon, the state must establish beyond a reasonable doubt that the defendant possessed a firearm; that he had previously been convicted of an enumerated felony; that at the time of the present offense the ten-year statutory period had not elapsed from completion or suspension of the prior felony sentence; and general intent to commit the present offense. La. R.S. 14:95.1; State v. Husband, 437 So.2d 269 (La.1983); State v. Morvan, 31,511 (La.App.2d Cir.12/9/98), 725 So.2d 515, writ denied, 99-0186 (La.5/28/99), 743 So.2d 659. General intent is shown when the proof shows that the perpetrator carried on his person a firearm. State v. Neeley, 30,008 (La. App.2d Cir.12/23/97), 704 So.2d 443; State v. Woods, 94-2650 (La.App. 4th Cir.4/20/95), 654 So.2d 809, writ denied, 95-1252 (La.6/30/95), 657 So.2d 1035. Moreover, the defendant's admission that he carried the gun in his pants pocket sufficiently reflects the requisite general intent. State v. Morvan, supra, and citations therein. Even a temporary possession may constitute possession proscribed by La. R.S. 14:95.1. State v. Day, 410 So.2d 741 (La.1982); State v. Goldsmith, 519 So.2d 299 (La.App. 2d Cir.1988).
Moreover, actual possession is not a necessary element of the offense; "constructive" possession of a firearm by a convicted felon will satisfy the possessory element of La. R.S. 14:95.1. State v. Day, supra; State v. Mandigo, 29913 (La. *129 App.2d Cir.10/31/97), 702 So.2d 351. Constructive possession occurs when a firearm is subject to defendant's dominion and control. Id.; State v. Washington, 605 So.2d 720 (La.App. 2d Cir.1992), writ denied, 610 So.2d 817 (1993). Constructive possession can be established if the weapon is subject to the felon's dominion and control even if it is only temporary in nature and even if the control is shared. State v. Wesley, 28,941 (La.App. 2 Cir. 12/13/96), 685 So.2d 1169, writ denied, 97-0279 (La.10/10/97), 703 So.2d 603; State v. Bailey, 511 So.2d 1248 (La.App. 2d Cir .1987), writ denied, 519 So.2d 132 (1988). If there is a reasonable time for the felon to divest himself of the weapon, no matter how it was obtained, he must do so. State v. Grant, 414 So.2d 373 (La.1982); State v. Day, supra.
The jurisprudence has developed a doctrine of "necessity" which expands the realm of justification, but this theory has a very limited application in felony firearm possession cases. See, State v. Recard, 97-754 (La.App. 3 Cir. 11/26/97), 704 So.2d 324, writ denied, 97-3187 (La.5/1/98), 805 So.2d 200. "Necessity," when raised as a defense to the illegal possession of a firearm, entails proof that the threat of force by another is imminent and apparent, and that the person threatened has no reasonable alternative but to possess the firearm. Id. Justification is an affirmative defense which the accused must establish by a preponderance of the evidence. State v. Cheatwood, 458 So.2d 907 (La.1984); State v. Brazil, 34,341 (La. App. 2 Cir. 4/4/01), 784 So.2d 734.
Shed contests no essential element of the offense but maintains he was justified in possessing the weapon. However, this record does not contain a preponderance of evidence to support justification. Under the standard set forth in State v. Recard, supra, Shed failed to prove necessity, i.e., that the threat of force by another was imminent and apparent, and that he had no reasonable alternative but to possess the firearm. He also failed to prove justification, i.e., that he was in imminent peril of great bodily harm, or reasonably believed himself or others to be in such danger. Shed's self-serving testimony that he thought someone was trying to beat the door down was not corroborated by any other testimony or evidence. One of the officers involved in the "knock and talk" testified that there was no "yelling" during the entry into Shed's residence.
Furthermore, even if Shed's testimony were acceptable at face value, it could not explain his continual, constructive possession of four other weapons seized from his house in addition to the gun he had on his person. See, State v. Day, supra; State v. Recard, supra. This was inconsistent with any claim of immediate peril. The claim of justification lacks merit.
This assignment of error is without merit.

Denial of Mistrial
Shed argues as his second assignment of error that the trial court erred by denying his request for a mistrial following the prosecutor's indirect reference, at voir dire, to Shed's failure to testify.
During jury voir dire, the Assistant District Attorney stated:
Let's suppose you're chosen as a juror and the Judge says" Mr. Brossette, it's time for the state to put on its case." And I say "Your Honor, the State rests." The defendant stands up and says we rest. And the Judge reads you the jury instructions and sends you back. Have I proven anything?
Immediately after this statement, there was a bench conference and the defense objected to the comment for the record. The defense requested a mistrial based *130 upon the ADA's statement; however, the trial court denied the request.
La.C.Cr.P. art. 770(3) provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:

* * * *
(3) The failure of the defendant to testify in his own defense[.]
Shed argues that under this article, a mistrial was mandated under the circumstances. He also contends that the admonition was not sufficient, as trial had actually begun with the examination of the first prospective juror under La.C.Cr.P. art. 761. He concludes that this error mandates the reversal of his conviction.
The state argues that the comment was indirect only and thus the proper standard of review is its "intended effect on the jury." State v. Johnson, 541 So.2d 818 (La.1989). The state argues that from the context of the comment, the district attorney was only trying to emphasize its own burden of proof and there was no intent to draw the jury's attention to Shed's failure to testify.
The purpose behind art. 770(3)'s prohibition against prosecutorial comment is to protect the defendant's Fifth Amendment right against self-incrimination by preventing attention being drawn directly or indirectly to the fact that the defendant has not testified on his own behalf. State v. Mitchell, 2000-13 (La.2/21/01), 779 So.2d 698; State v. Fullilove, 389 So.2d 1282, 1283 (La.1980). To warrant the granting of a mistrial, the inference must be plain that the remark was intended to focus the jury's attention on the defendant's not testifying. State v. Mitchell, supra; State v. Reed, 284 So.2d 574, 576 (La.1973); State v. Howard, 262 La. 270, 263 So.2d 32 (1972).
The instant case involves an indirect and hypothetical reference to the defendant's potential failure to take the stand. Thus, in order to support the granting of a mistrial, the inference must be plain that the remark was intended to focus the jury's attention on Shed's not testifying. State v. Mitchell, supra; State v. Smith, 327 So.2d 355 (La.1975); State v. Reed, supra.
We first note that Shed did in fact testify at trial regarding his justification defense. Secondly, it is clear from the content and context of the prosecutor's comment that he was trying to emphasize the state's burden of proof. There was no intent to focus the prospective jury's attention on Shed's failure to testify. Here, as in State v. Morton, 483 So.2d 174 (La.App. 2 Cir.1986), at the stage of trial involved (jury voir dire), Shed had not yet elected whether to testify or not. Thus, review of the comment in its proper context reveals no intent by the state to call attention to defendant's failure to testify. The record supports the trial court's ruling.
This assignment of error is meritless.

Ineffective Assistance of Counsel
Shed's last assignment of error is that he received ineffective assistance of counsel.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La.C.Cr.P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Green, 27,652 (La. App.2d Cir.1/24/96), 666 So.2d 1302, writ denied, 97-0504 (La.10/31/97), 703 So.2d *131 14. However, when the record is sufficient, we may resolve this issue on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La.App.2d Cir.9/27/95), 661 So.2d 673.
A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish that his attorney was ineffective, defendant must first show that counsel's performance was deficient, and that counsel's deficient performance prejudiced his defense. Strickland, supra. To establish the prejudice prong of the test, defendant must show that, but for the counsel's unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different. Strickland, supra; State v. Pratt, 26,862 (La.App. 2 Cir. 4/5/95), 653 So.2d 174. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Hunt, 34,945 (La.App. 2 Cir. 9/26/01), 797 So.2d 138;

State v. Moore, 575 So.2d 928 (La.App. 2 Cir.1991).
Shed argues that his trial counsel should have filed a motion to suppress evidence and statements following the police's warrantless and non-consensual entry into his home. He contends that this failure substantially affected the outcome of the trial. Utilizing the trial evidence, Shed argues that the search and seizure were unreasonable and, even though a warrant was ultimately obtained, the court would have granted a motion to suppress.
Jurisprudence allows the "knock and talk" approach of police. See, State v. Davenport, 32-329 (La.App.2d Cir.9/22/99), 801 So.2d 380; State v. Green, 598 So.2d 624 (La.App. 3d Cir.1992). Knocking on a door is an "age old request for permission to speak to the occupant." State v. Haywood, 00-1584 (La.App. 5th Cir.3/28/01), 783 So.2d 568, quoting State v. Sanders, 374 So.2d 1186, 1188 (La.1979). When a door is opened in response to a knock, it is a consent of the occupant to confront the caller, and there is no compulsion, force or coercion involved. Id.
Furthermore, it is well established that evidence in the open or plain view of a police officer who is legally on the premises from which he obtains the view is subject to seizure without a warrant. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); State v. Brand, 357 So.2d 545 (La.1978); State v. Williams, 347 So.2d 231 (La.1977). It is equally clear that the object may be seized only where it is apparent that the object is contraband or evidence. State v. Braud, supra; State v. Meichel, 290 So.2d 878 (La.1974).
A warrantless search conducted pursuant to a valid consent is permitted by the Louisiana and United States Constitutions. State v. Ludwig, 423 So.2d 1073 (La.1982); State v. Johnson, 380 So.2d 32 (La.1980); State v. Lincoln, 34,770 (La.App.2d Cir.6/22/01), 794 So.2d 56. Consent is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. State v. Bodley, 394 So.2d 584 (La.1981); State v. Brown, 32,407 (La.App.2d Cir.9/22/99), 743 So.2d 807. In the context of a premises search, generally consent may be obtained from one having mutual use of the premises. State v. Normandin, 32,927 (La. App.2d Cir.12/22/99), 750 So.2d 321, writ denied, XXXX-XXXX (La.9/29/00), 769 So.2d 550.
*132 Oral consent to search is sufficient to constitute an exception to the warrant and probable cause requirements of the United States and Louisiana Constitutions. State v. Brown, supra; State v. Lincoln, supra. Written consent is not required. State v. Ossey, 446 So.2d 280 (La. 1984), cert. denied, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984); State v. Walker, 530 So.2d 1200 (La.App. 2d Cir.1988), writ denied, 532 So.2d 763 (La.1988). Although a valid consent search is a recognized exception to the warrant requirement, the burden is on the state to prove that the consent was given freely and voluntarily. La. C.Cr.P. art. 703 D; State v. Yarbrough, 418 So.2d 503 (La.1982).
On this appellate record, we do not find that Shed's trial counsel was ineffective for failing to file a motion to suppress.
The "knock and talk" scenario and the subsequent seizure of drugs and guns did not present a situation where Shed's constitutional rights were violated. The police officers were performing a permissible "knock and talk," and were invited into Shed's home by a person with apparent authority to open the door and invite the officers inside while he got the owner. Notably, Shed never advised the police that Lee lacked authority to let them in. The officers were therefore legally on the premises and inside the residence. Inside the home, the officers saw and seized what was clearly contraband in plain view. State v. Braud, supra; State v. Williams, supra; State v. Fearn, 345 So.2d 468 (La. 1977). Shed then voluntarily consented to the warrantless search by admitting to the police that there were more drugs, specifically in the kitchen cabinet, and informed the police that he had a weapon on his person. State v. Ludwig, supra; State v. Johnson, supra; State v. Lincoln, supra. Trial counsel's decision not to file a pretrial motion to suppress was within the ambit of trial strategy, and he was not required to engage in futility. State v. LeBeau, 621 So.2d 26 (La.App. 2d Cir. 1993); State v. Pendelton, 96-367 (La.App. 5 Cir. 5/28/97), 696 So.2d 144, writ denied, 97-1714 (12/19/97), 706 So.2d 450.
Appellate defense counsel has not shown that a different outcome probably would have occurred if a motion to suppress had been filed. Defense counsel's conduct as to this issue cannot be considered ineffective assistance of counsel under Strickland, supra, as it was neither deficient nor prejudicial.
This assignment of error is without merit.

Conclusion
We have reviewed the entire record and find nothing we consider to be error patent. The conviction and sentence are therefore AFFIRMED.
CONVICTION AND SENTENCE AFFIRMED.