566 So.2d 1120 (1990)
STATE of Louisiana, Appellee,
v.
Ferlando M. LEWIS, Appellant.
No. 21719-KA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1990.
*1122 Charles A. Smith, Minden, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Henry N. Brown, Jr., Dist. Atty., L. Charles Minifield, Asst. Dist. Atty., Bossier City, for appellee.
Before SEXTON, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
Following a jury trial, the defendant, Ferlando Lewis, was convicted of possession of cocaine, in violation of LSA-R.S. 40:967(C)(2). He appealed. For the reasons assigned below, we affirm the defendant's conviction and sentence.

FACTS
At approximately 7 p.m. on May 22, 1989, Louisiana State Trooper L.T. Riser observed a blue 1986 Oldsmobile stopped in the middle of Parish Road 159, a small country road located between Sibley and Dubberly in Webster Parish, Louisiana. The trooper pulled his patrol car up behind the stopped vehicle and observed two men in the front seat leaning toward the center of the car. When the occupants noticed the State Police vehicle behind them, they began to move as though they were placing objects under the front seat. Then the Oldsmobile drove off and proceeded about 300 to 400 feet into the town of Dubberly. The car stopped on the wrong side of the road, facing north in the southbound lane of traffic.
Trooper Riser stopped his patrol car parallel to the Oldsmobile at a distance of about 25 feet. The driver's window of the patrol car was opposite the right front window of the Oldsmobile. The trooper testified that the defendant, who was seated in the right front passenger seat, told him that he did not know what was wrong with the driver, Derrick Moody. The defendant *1123 said Moody had been driving too fast and had almost wrecked the vehicle.
The trooper ordered Moody to place his hands on the dashboard several times before he complied. The defendant turned off the car ignition and placed his hands on the dashboard. Trooper Riser exited his patrol car and walked to the rear of the Oldsmobile. He ordered Moody out of the car and instructed him to place his hands on the trunk. In response to the officer's inquiries, Moody stated that he had no registration papers on the car because he did not know who owned it or where it had come from. Also, he did not have a driver's license.
The defendant, who was still seated in the Oldsmobile, began to insist that the officer allow him to get out of the car. He claimed that he could not breathe because of the heat. The officer repeatedly ordered the defendant to put his hands in sight on the dashboard. Finally, the officer instructed the defendant to get out and go around to the back of the vehicle.
Trooper Riser was standing about 8 to 9 feet from the driver's window of the Oldsmobile. He was able to view the defendant clearly from the shoulders up. The officer noted that the defendant kept moving his hands. When the defendant began to exit the car on the passenger side, he reached with his left hand to open the door. Then his right arm moved out of sight. Trooper Riser testified that it appeared as though the defendant dropped something out of the vehicle.
After the defendant moved behind the car, Trooper Riser walked around the Oldsmobile and observed a brown plastic pill bottle lying on the ground directly under the passenger door. The officer testified that he had observed this area of the blacktop road before he first approached the Oldsmobile and that the bottle had not been there at that time.
Trooper Riser radioed for backup assistance. Shortly thereafter, Jack Tucker, an investigator for the Webster Parish Sheriff's Office and the Minden Police Department, arrived on the scene. He too observed the brown bottle lying on the road beside the car. He watched as Trooper Riser opened the bottle and discovered a substance inside resembling crack cocaine. Trooper Riser then locked the bottle in the trunk of his police car. (He subsequently transported the bottle to the Northwest Louisiana Crime Lab for analysis.)
Trooper Riser also looked inside the Oldsmobile and discovered a glass pipe on the front seat. He found a box of Brillo scouring pads on the floorboard on the passenger side. Testimony presented at trial established that these items were drug paraphernalia used in smoking crack cocaine.
Subsequent analysis of the contents of the pill bottle determined that it contained cocaine. Investigation also determined that the Oldsmobile was stolen.
On June 12, 1989, a bill of information was filed charging the defendant with one count of possession of cocaine, in violation of LSA-R.S. 40:967(C)(2), and one count of unauthorized use of a movable, in violation of LSA-R.S. 14:68. On July 19, 1989, an amended bill was filed, charging the defendant with one count of possession of cocaine. The State dismissed the charge of unauthorized use of a movable.
Trial before a six-person jury was held on July 19, 1989. The State presented the testimony of Trooper Riser, Deputy Tucker, and James R. Gobel, a forensic chemist from the Northwest Louisiana Crime Lab. The defense presented no evidence. The jury returned an unanimous verdict of guilty as charged.
On November 6, 1989, the trial court sentenced the defendant to four years at hard labor.
The defendant appeals. He assigns as error the following: (1) the trial court erred in admitting evidence of other crimes, i.e., possession of drug paraphernalia; (2) the trial jury erred in finding that there was sufficient evidence to convict the defendant of possession of cocaine; and (3) the trial court erred in imposing an excessive sentence.

*1124 Admissibility of Drug Paraphernalia

The defendant contends that the trial court erred by admitting into evidence the glass pipe and the Brillo scouring pads which were found in the Oldsmobile at the time of his arrest. He argues that the admission of these items constituted an improper introduction of evidence of other crimes (possession of drug paraphernalia, in violation of LSA-R.S. 40:1031, et seq) under LSA-LCE Art. 404(B). He further argues that the items were not relevant to the charge of possession of cocaine and that the State failed to connect him to the items.
The trial court overruled the defendant's objection to the admissibility of this evidence. We find no error in the trial court's ruling.
LCE Art. 404(B)(1) provides:
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. (Emphasis ours).
We note that this article incorporates the principles set forth in several former statutes, including LSA-R.S. 15:446 (admissibility of facts tending to show knowledge or intent) and LSA-R.S. 15:448 (res gestae). These statutes were repealed effective January 1, 1989, when the Louisiana Code of Evidence became effective. The Official Comments to Art. 404 demonstrate that the jurisprudence which has arisen under these articles is still valid. The Comments state as follows:
* * * * * *
(k) The first sentence of Paragraph B of this Article is not intended to change the law. See State v. Prieur, 277 So.2d 126 (La.1973); Art. 1103, infra. Although the second sentence of Paragraph B contains a longer list of purposes for which evidence of other crimes is admissible than that found in former R.S. 15:445-446, it generally accords with the rules actually applied by the Louisiana courts. State v. Kahey, 436 So.2d 475 (La.1983).
* * * * * *
(m) The phrase "or when it relates to conduct which constitutes an integral part of the act or transaction that is the subject of the present proceeding" has been added to the matters listed in Federal Rule of Evidence 404(b) [the approach of which Paragraph B generally follows] as a substitute for the ambiguous phrase "res gestae" used in former R.S. 15:447-448.
The jurisprudence under these earlier articles clearly established that drug paraphernalia seized at the time of a defendant's arrest for possession of a controlled dangerous substance is admissible evidence at the trial on the possession charge. In State v. Green, 437 So.2d 302 (La.App. 2d Cir.1983), writ denied 443 So.2d 1121 (La. 1984), the court upheld the admissibility of drug paraphernalia and marijuana found in the car occupied by the defendant at the time of his arrest for possession of preludin. The court found that the objects were "immediate concomitants" of the crime and thus constituted part of the res gestae of the offense under former LSA-R.S. 15:448. The court also found that the items were relevant to show the defendant's knowledge and intent to possess a controlled dangerous substance. See former LSA-R.S. 15:446.
The holding in Green, supra, has been followed in State v. Bailey, 452 So.2d 756 (La.App. 2d Cir.1984), writ denied 456 So.2d 161 (La.1984), and State v. Hodges, 526 So.2d 1275 (La.App. 3rd Cir.1988), writ denied 532 So.2d 174 (La.1988).
In the present case, the trial court was correct in admitting the glass pipe and the Brillo pads. The testimony of Trooper Riser established that these items were drug paraphernalia utilized in smoking crack cocaine. The items, which were well within *1125 the defendant's sphere of control, were obviously connected to the defendant. This evidence constituted "an integral part of the act ... that [was] the subject of the present proceeding." Further, as in State v. Green, supra, the pipe and Brillo pads were relevant to show the defendant's intent and guilty knowledge in the possession of cocaine. If the defendant was prejudiced by the admission of this evidence, any prejudice was substantially outweighed by its probative value. See LSA-LCE Art. 403.
This assignment of error is without merit.

SUFFICIENCY OF EVIDENCE
The defendant argues that the state produced insufficient evidence to support his conviction for possession of cocaine. He maintains that the pill bottle containing crack cocaine was never observed in his physical possession. He further complains that no fingerprint tests were performed on the bottle and thus there is no proof that he ever touched it.
In reviewing sufficiency challenges, an appellate court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational factfinder could have found that the state proved beyond a reasonable doubt the defendant committed the acts necessary to constitute every element of the offense charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.1989), writ denied 544 So.2d 398 (La. 1989).
The evidence in the present case established the following facts. Trooper Riser discovered the Oldsmobile parked in the middle of a road. He then observed the occupants, the defendant and Moody, leaning toward the center of the car. When they observed the officer's presence, Moody drove the car off abruptly and stopped it in the wrong lane of traffic. Trooper Riser further observed the occupants of the car apparently trying to conceal something under the front seat. Neither man adequately complied with the trooper's directions to place their hands on the dashboard where he could observe them.
The facts developed at trial further disclosed that Moody responded to Trooper Riser's inquiries by declaring that he did not know who the Oldsmobile belonged to or where it had come from. Trooper Riser observed the defendant repeatedly moving about in the car. When the trooper allowed the defendant to get out of the vehicle, he observed the defendant apparently dropping something. The trooper then saw a pill bottle on the ground directly beneath the car door through which the defendant had exited. Based upon his previous observations of the area around the car, Trooper Riser was able to establish that the bottle was not there when he first approached the vehicle. Upon his arrival, Deputy Tucker verified that the bottle was on the ground and that he witnessed Trooper Riser opening it. Both officers testified that its contents resembled crack cocaine. Subsequent laboratory analysis confirmed their opinions.[1]
Additionally, Trooper Riser discovered a glass pipe and Brillo scouring pads in the Oldsmobile. The officer's testimony established that these items were commonly utilized as drug paraphernalia for smoking crack cocaine.
Viewed in the light most favorable to the prosecution, the above-mentioned evidence would plainly allow a rational factfinder to conclude that the defendant's guilt of cocaine possession had been proven beyond a reasonable doubt.
This assignment of error is without merit.

EXCESSIVE SENTENCE
The defendant contends that the trial court erred in imposing an excessive sentence. The trial court ordered that the defendant serve a sentence of four years at *1126 hard labor for the offense of possession of cocaine.
In determining whether a sentence is excessive, the test imposed by the reviewing court is two-pronged. First, the record must show that the trial court took cognizance of the factors set forth in LSA-C.Cr.P. Art. 894.1 which enumerates criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied 439 So.2d 1074 (La.1983); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied 435 So.2d 438 (La. 1983).
While the trial court need not articulate every aggravating and mitigating circumstance outlined in LSA-C.Cr.P. Art. 894.1, the record must reflect that the court adequately considered those guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La. App. 2d Cir.1983), writ denied 438 So.2d 1112 (La.1983).
The articulation of the factual basis for a sentence is the goal of LSA-C. Cr.P. Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even when there has not been full compliance with LSA-C.Cr.P. Art. 894.1. State v. Lanclos, 419 So.2d 475 (La. 1982). Important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied 521 So.2d 1143 (La.1988).
After determining whether the provisions of LSA-C.Cr.P. Art. 894.1 have been complied with by the trial court, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.
The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing court. State v. Square, 433 So.2d 104 (La.1983); State v. Hammonds, supra; State v. Brooks, 431 So.2d 865 (La. App. 2d Cir.1983).
A sentence is unconstitutionally excessive in violation of La. Const. 1974 Art. 1, § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, supra. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied 435 So.2d 433 (La.1983).
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions, but may properly review all prior criminal activity. State v. Palmer, 448 So.2d 765 (La.App. 2d Cir.1984), writ denied 452 So.2d 695 (La.1984). As a general rule, maximum or near maximum sentences are to be reserved for the worst offenders and the worst offenses. State v. Lathers, 444 So.2d 96 (La.1983); State v. Telsee, 425 So.2d 1251 (La.1983); State v. Williams, 454 So.2d 1287 (La.App. 2d Cir.1984).
In imposing sentence upon the 20-year-old unmarried defendant, the trial court reviewed his personal history. The defendant quit school in the 12th grade at the age of 17. He subsequently returned to school and obtained his high school diploma in August, 1988. While the defendant's former principal believed that he was capable of making good grades, the defendant refused to attend school regularly. The defendant's only employment experience consisted of working for the CETA program *1127 one summer. Additionally, the defendant admitted an occasional consumption of alcohol, as well as use of marijuana and cocaine on a monthly basis.
The trial court took notice of the defendant's prior criminal record. The defendant had a juvenile record. His juvenile probation officer stated that the defendant did well under supervision but was unable to handle complete freedom. Additionally, the defendant had a 1987 conviction for simple burglary. He received a suspended sentence of three years at hard labor and was placed on probation. In June, 1989, his probation was revoked because of his failure to report to his probation officer, to seek employment, to submit to drug screenings, and to remain free of arrest (a reference to the present offense).[2]
The trial court examined the facts of the present offense. The defendant was found to be in possession of 70 "rocks" of crack cocaine or 23.6 grams. At the time of the offense, he was already on probation for his simple burglary conviction. According to the pre-sentence investigation (PSI) report, the defendant admitted smoking crack cocaine on the night of his arrest. However, he denied any knowledge of the crack cocaine found on the ground. He also denied knowledge of the auto theft.
The trial court correctly found that the defendant, as a second felony offender, was ineligible for the IMPACT program or probation. It further found that the defendant was in need of correctional treatment which was best provided in an institution. The defendant did not act under any strong provocation. No serious harm was threatened or contemplated by the defendant. However, the trial court found that the defendant's character was such that he was likely to commit another crime. The court also noted that his incarceration would not cause undue hardship to the defendant or any dependents.
The maximum penalty for possession of cocaine is imprisonment with or without hard labor for five years and a fine of $5,000. The defendant's sentence of four years at hard labor is fully supported by the record. The defendant was in possession of more than 23 grams of crack cocaine at a time when he was already on probation for a felony. His probation was revoked not only because of the present offense but also due to his violation of other conditions of probation. He had both a juvenile record and an adult record. By his own admission, he was a substance abuser who regularly ingested alcohol, marijuana and cocaine. In light of all these factors, we find that the sentence imposed upon the defendant was not excessive.
This assignment of error has no merit.

CONCLUSION
Based upon the foregoing, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The state proved a proper chain of custody establishing that the contents of the seized pill bottle were analyzed at the crime lab and transported to court.
[2] When the trial court imposed sentence on this charge of possession of cocaine, it directed that the defendant, who had been incarcerated since his arrest, not receive credit for time already served as such time was to be credited to the sentence which he must serve following the revocation of his probation.