771 So.2d 877 (2000)
STATE of Louisiana, Appellee,
v.
Norbey E. RABORN, Jr., Appellant.
No. 33,980-KA.
Court of Appeal of Louisiana, Second Circuit.
November 15, 2000.
*878 J. Ransdell Keene, Shreveport, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy Johnson, John Ford McWilliams, Assistant District Attorneys, Counsel for Appellee.
Before BROWN, PEATROSS and DREW, JJ.
BROWN, J.,
Defendant, Norbey E. Raborn, Jr., pled guilty to possession of over 28 grams of methamphetamine, reserving his right under *879 State v. Crosby, 338 So.2d 584 (La. 1976), to appeal the denial of his motion to suppress. He was sentenced by agreement to the minimum term of 10 years at hard labor and a $50,000 fine. The evidence supporting the charge was obtained through the execution of a search warrant. Defendant claims that the warrant did not particularly describe a detached shop where the CDS was found and thus, the evidence must be suppressed and excluded.[1] The trial court denied the motion to suppress. We affirm.

Facts and Procedural Background
The property to be searched was described in the warrant as:
on or in the premises/person/vehicle located at a brown in color, single family dwelling, of wood and brick construction, located on the north side of Bonnydune in Caddo Parish, La. The residence faces Bonnydune with the numbers 9512 affixed on the front of the residence.
The warrant directed the police to search for methamphetamine, drug paraphernalia, monies and documents derived from the sale of CDS.
In his motion to suppress, defendant alleged that the warrant authorized a search of a "residence," but the actual seizure occurred in "a detached building clearly marked `Bim's Bike Specialities,' a business separate and apart from the residence for which the warrant was issued."

Synopsis of Testimony
The court held a contradictory hearing on defendant's motion to suppress. The affidavit supporting the search warrant was executed by Sergent William A. Rehak, a Caddo Parish Sheriffs Officer, and contained the following information: that Sgt. Rehak obtained information from a person he had arrested on November 1, 1997, who told him that she/he had purchased 10 grams of methamphetamine from "Bim" Raborn (defendant) at Raborn's Bonnydune residence; that the arrestee related that she/he had seen a larger quantity of methamphetamine in a freezer bag at the time of the purchase; that two days later, on November 3, 1997, a reliable confidential informant told the affiant that the CI knew Raborn, had purchased methamphetamine from him in the past and knew Raborn possessed large quantities of methamphetamine at the 9512 Bonnydune address; that the CI made a controlled buy of methamphetamine from Raborn "while inside an enclosed garage belonging to the Raborn family at 9512 Bonnydune;" and, that during the course of the drug deal, Raborn told the CI to come back if she/he wanted more methamphetamine. Based upon this affidavit a search warrant was issued on November 4, 1997, and executed on November 5, 1997.
Sgt. Rehak testified that the residence at 9512 Bonnydune is a single story dwelling on premises enclosed with a six-foot privacy fence. Sgt. Rehak stated that there are a couple of small buildings in the backyard, one of these being an attached garage and the other the shop in which the drugs were found. Both the house and the shop are enclosed by the fence. When the search warrant was executed, the officers *880 found $1,155 in defendant's pocket, $420 of which was money they had given the CI to buy drugs. A small amount of marijuana and some drug paraphernalia were found in several of the bedrooms. Found inside the shop were 118 grams of meth and approximately $105,000 [actually $123,118] in cash. Although not mentioned in the warrant, Sgt. Rehak noted his belief that the shop was part of the residence. Sgt. Rehak pointed out that the address listed for the bike shop was the same as the residence, 9512 Bonnydune.
Deputy Kirk Filler testified that he had no part in preparing the affidavit, but that he participated in the execution of the warrant. The meth was found in a building located about 40 feet from the residence. Dy. Filler characterized the distance between the two buildings as "fairly close." The property appeared to be residential rather than commercial. Dy. Filler saw nothing that would distinguish the shop as a business. To him, the shop looked like a garage.
Deborah Boles, defendant's sister and owner of the residence located at 9512 Bonnydune, informed the court that defendant is known as "Bim." Ms. Boles stated that the motorcycle shop is not used as a part of the residence. The shop has its own separate electric utility meter and telephone line. She conceded, however, that the shop is wholly on her property and is in the fenced backyard.

Trial Court's Ruling
The court found that the officers had probable cause to search the unattached garage based on the affidavit in support of the search warrant; the garage was part of the curtilage of the residence and therefore subject to being searched pursuant to the warrant which authorized a search of the "premises." The court also found that "at the time the search warrant was executed, the unattached garage was within the confines of a six-foot privacy fence which surrounds the entire backyard of the property and further there was no sign on the unattached garage indicating that it was a business separate from the house."
Defendant pled guilty as charged and reserved his right to appeal the denial of the motion to suppress under Crosby.
Prior to the imposition of the agreed upon sentence, defendant filed a motion asking the court to reconsider its decision on the motion to suppress. In this motion, as on appeal, defendant urged that the search warrant authorized a search only of the residence and its attached garage, not a search of the unattached, separate building in which the drugs were found and which was used as a motorcycle repair shop. According to defendant, this shop was not part of the curtilage of the house.
In support of the motion to reconsider, defendant attached an affidavit and a map furnished by a regular customer of the motorcycle repair business. These documents reflect that there are separate driveways, approximately 40 feet apart, leading to the attached garage and to the unattached shop. In his affidavit, the customer asserts that the shop bears a sign above the entrance which reads "Bim's Bikes."
The court denied this motion, finding that the term "premises" encompassed this particular outbuilding. On appeal, defendant urges that the trial court erred in finding that the motorcycle shop was part of the "premises" and within the curtilage of the home at 9512 Bonnydune.

Discussion
The Fourth Amendment to the U.S. Constitution and Article 1, § 5 of the Louisiana Constitution (1974) protect against unreasonable searches and seizures[2] and provide that no such search or seizure may be made except pursuant to a warrant issued upon probable cause supported by oath or affirmation and particularly describing the place to be searched, the person or things to be seized and the lawful purpose or reason for the search.
*881 The primary purpose of the particularity requirement is to prevent wide-ranging general searches by the police. United States v. Leon, 468 U.S. 897, 963, 104 S.Ct. 3405, 3430, 82 L.Ed.2d 677 (1984) (Stevens, J., dissenting); United States v. Bonner, 808 F.2d 864 (1st Cir.1986), cert. denied, 481 U.S. 1006, 107 S.Ct. 1632, 95 L.Ed.2d 205 (1987); State v. Sterling, 99-2598 (La.04/25/00), 759 So.2d 60. The object of the description in a search warrant is to prevent the search of the wrong premises. State v. Smith, 397 So.2d 1326 (La.1981); State v. Sterling, supra at 63 (Johnson, J., dissenting); State v. Johnson, 534 So.2d 1322 (La.App. 4th Cir.1988).
The supporting affidavit is made a part of a warrant and incorporated by reference therein. The affidavit may be looked at to help supply the necessary particularization. State v. Kyles, 513 So.2d 265 (La.1987); State v. Bertoniere, 96-286 (La.App. 5th Cir.11/14/96), 685 So.2d 202. A search conducted under the authority of a search warrant may extend to the entire area covered by the warrant's description. A search warrant authorizing the search of the "premises" at a stated address must reasonably be interpreted to permit a search of the dwelling house, the garage, and any other outbuildings within close proximity of the house proper that one normally associates with and includes within the word "house" or "premises." State v. Kimble, 375 So.2d 924 (La.1979); State v. Roach, 322 So.2d 222 (La.1975); State v. Camp, 459 So.2d 53 (La.App. 2d Cir.1984), writ denied, 462 So.2d 212 (La.1985).
In the federal courts, it is well settled that if a warrant authorizes a search of "premises" at a certain described geographical location, buildings standing on that land may be searched. United States v. Bennett, 170 F.3d 632 (6th Cir.1999); United States v. Earls, 42 F.3d 1321 (10th Cir.1994), cert. denied, 514 U.S. 1085, 115 S.Ct. 1800, 131 L.Ed.2d 727 (1995); United States v. Bonner, supra; United States v. Williams, 687 F.2d 290 (9th Cir.1982).
If the place to be searched is identified by street number, the search is not limited to the residence, but may also extend to the garage and other structures deemed to be within the curtilage. See United States v. Bennett, supra (detached shop building); United States v. Estrella, 104 F.3d 3 (1st Cir.1997), cert. denied, 521 U.S. 1110, 117 S.Ct. 2494, 138 L.Ed.2d 1001 (1997) (two-car garage connected by breezeway); United States v. Earls, supra (detached garage, shed and office); United States v. Griffin, 827 F.2d 1108 (7th Cir. 1987), cert. denied, 485 U.S. 909, 108 S.Ct. 1085, 99 L.Ed.2d 243 (1988) (tool shed); United States v. Moore, 743 F.2d 254 (5th Cir.1984) (garage 35-40 feet from house and enclosed with house inside single fence); State v. Roach, supra (carport); State v. Camp, supra (motorcycle trailer in backyard); State v. Brouillette, 465 So.2d 124 (La.App. 4th Cir.1985) (shed in patio area); State v. Stroud, 438 So.2d 1172 (La.App. 3d Cir.1983) (storage shed).
To determine whether an area is part of the curtilage, or extension of the residence's living area, courts are to look at four factors which indicate how intimately the area is tied to the home itself: (1) the area's proximity to the home; (2) whether the area is included within an enclosure surrounding the home; (3) whether the area is being used for the intimate activities of the home; and (4) the steps taken by the resident to protect the area from observation by passersby. United States v. Dunn, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987); United States v. Gorman, 104 F.3d 272 (9th Cir. 1996).
Contrary to defendant's argument, the warrant did not limit the search to the residence; a close reading of the particular language used in the warrant shows instead that a broader scope was intended and that the description of the residence was simply to make the premises to be searched more readily identifiable. As noted above, both federal and state jurisprudence permit a search of outbuildings *882 located within the curtilage when the search warrant, as here, simply authorizes a search of the "premises" at a designated street address. We further note that the affidavit in support of the warrant stated that the CI's buy occurred in an enclosed garage. That description fits the detached shop building as well as the garage attached to the residence. There can be no doubt of the particularization of what was to be searched.
The district court did not abuse its discretion in denying defendant's motion to suppress or the motion to reconsider that ruling.

Conclusion
For the reasons set forth above, defendant's conviction and agreed upon sentence are AFFIRMED.
NOTES
[1] The state originally charged defendant, Norbey E. Raborn, Jr., with possession "of over 28 grams of methamphetamine or of a mixture or substance containing a detectable amount of cocaine," alleging a violation of La. R.S. 40:967 F(A) (a miscited article which applies only to possession of cocaine). The state later filed an amended bill of information charging defendant with possession of over 28 grams of methamphetamine alleging a violation of La. R.S. 40:967 F(1)(a) (again, an article which applies only to possession of cocaine) and in a second count with being a second offender.

Defendant did not challenge the misidentification of the charging article. While the amended bill does miscite the statute of the charged offense, the bill does correctly identify the drug as methamphetamine. The evidence shows that the contraband seized was in fact methamphetamine. The proper statute would have been La. R.S. 40:967(F)(2)(a). This, however, is harmless error. Defendant was not misled and the sentences provided for by both articles were the same in 1997.
[2] La. Const. Art. 1, § 5 also provides protection from unreasonable invasions of privacy.