794 So.2d 56 (2001)
STATE of Louisiana, Appellee,
v.
Danny LINCOLN, Appellant.
No. 34,770-KA.
Court of Appeal of Louisiana, Second Circuit.
June 22, 2001.
*59 Michael Wayne Kelly, Lake Providence, Counsel for Appellant.
Richard Ieyoub, Attorney General, James M. Bullers, District Attorney, Louis Charles Minifield, John Schuyler Marvin, Assistant District Attorneys, Counsel for Appellee.
Before BROWN, STEWART and CARAWAY, JJ.
CARAWAY, J.
The defendant was tried by jury and convicted as charged of: Count 1, knowingly and intentionally possessing a Schedule II Controlled Dangerous Substance ("CDS"), cocaine, with the intent to distribute; Count 2, knowingly and intentionally possessing a II CDS, oxycodone, with the intent to distribute; Count 3, knowingly and intentionally possessing a III CDS, hydrocodone, with the intent to distribute; and Count 4, knowingly and intentionally possessing an automatic rifle as a convicted felon in violation of La. R.S. 14:95.1. He was sentenced to serve 20 years at hard labor each on Counts 1, 2 and 3, all to be served concurrently with any other sentence, and 10 years at hard labor without benefit of parole, probation or suspension of sentence on Count 4, to be served consecutively with any other sentence.
The defendant appeals, contesting the trial court's ruling on the motion to suppress evidence discovered by police pursuant to two searches, one for his residence conducted with a warrant and a second consent search of a storage building located at his mother's residence immediately adjacent to defendant's house. Defendant also asserts that the trial court erred in allowing the State to introduce evidence of other crimes at trial. Additionally, defendant contests the sufficiency of the evidence regarding the three convictions based on his alleged constructive possession of the contraband seized from his mother's storage building.[1] Finding no error in the trial court's rulings regarding the motion to suppress, the introduction of *60 the disputed evidence, or the sufficiency of the evidence, we affirm the defendant's convictions and sentences.

Facts
The defendant, Danny Lincoln ("Lincoln"), resided at a house located at 1426 Harper Lane in Minden. Abutting the defendant's backyard, and separated only by a fence, was the backyard of the home of the defendant's mother, Essie Lincoln ("Mrs.Lincoln"), located at 1416 Webster Street. The distance from the back door of Lincoln's residence and the back door of Mrs. Lincoln's residence was approximately 30 to 40 feet. Mrs. Lincoln's yard contained a storage building located approximately halfway between the two residences.
At about 6:46 p.m. on December 20, 1996, Detective Dan Weaver of the Minden Police Department, accompanied by several other officers, executed a search warrant for Lincoln's Harper Lane residence. The search warrant was based upon Detective Weaver's personal observation of a confidential informant's purchase of crack cocaine from Lincoln at the residence a few days prior to the search. The warrant contained Detective Weaver's oath that he had good reason to believe that the premises described contained controlled dangerous substances, including but not limited to crack cocaine, drug paraphernalia, evidence of drug transactions, money and weapons. The warrant described the area to be searched as the premises located at 1426 Harper Lane.
Upon executing the search warrant, the officers discovered various illegal drugs and drug-related items in Lincoln's residence, including oxycodone pills, marijuana, a set of black weight scales, and approximately 50 very small Apple brand "baggies." Detective Weaver, an expert in the field of drug detection, packaging, distribution and evaluation, stated that the "baggies" were used to package illegal narcotics. No cocaine or weapon was found in the defendant's residence.
After the police officers entered the home, their vehicles were removed from the premises. Thereafter, several other vehicles arrived at Lincoln's residence. In turn, the vehicles' occupants were arrested on various drug paraphernalia and narcotics charges. Among the arrestees were Vicki Crew, Steven Konduros and Randall Pate. Konduros, who was on probation at the time, offered information about the defendant to the officers. Konduros told Weaver that he had previously purchased illegal narcotics from Lincoln. When asked from which direction the defendant brought the narcotics during previous purchases, Konduros pointed toward the fence and the storage building located on Mrs. Lincoln's property.
Detective Weaver and Officer Richard Cooper walked through the unlocked fence gate of Mrs. Lincoln's backyard and knocked on Mrs. Lincoln's back door. Mrs. Lincoln came to the door; the officers announced their identity and entered Mrs. Lincoln's screened-in back porch. Detective Weaver explained to Mrs. Lincoln that they had information that the storage building contained illegal narcotics. Detective Weaver showed Mrs. Lincoln a waiver of search warrant form and asked her to sign it to consent to the search of the storage building. Detective Weaver explained the waiver of search warrant form to Mrs. Lincoln, filled it out and read it to her line by line. Mrs. Lincoln then read the form again and signed it in the presence of Detective Weaver and Officer Cooper.
Detective Weaver and Officer Cooper conducted the consent search of the unlocked storage building. It revealed a large rock of crack cocaine, several crumbs of cocaine, and a set of weight scales containing *61 cocaine residue. Among the items also found were 2,241 Lortab pills, more scales, a large quantity of Apple "baggies," and a Chinese AK 47 7.62 automatic rifle with a 40-round clip. A shotgun and a .22 rifle were also confiscated. At trial, evidence revealed that Lincoln had a previous felony conviction within ten years prior to the 1996 arrest.

Discussion
In contesting the trial court's ruling on his motion to suppress, Lincoln asserts that there was no probable cause for his arrest and for the issuance of a search warrant in connection with the items seized from his residence. He asserts that the search warrant was never introduced into evidence in the proceedings below. The defendant further argues that there existed no exigent circumstances for the officers to search the storage building located on Mrs. Lincoln's adjacent property. He asserts that his mother's consent to the search of the storage building was not voluntary because she was not properly informed that she was not required to comply with the search request and because of the confusing circumstances that existed at the time her consent was requested. He contends that the officers' entrance through his mother's backyard implies bad faith and subjects the consent search to great scrutiny.

Suppression of Evidence Seized Pursuant to Search Warrant
When a search is conducted pursuant to a search warrant, the defendant has the burden to prove the grounds of his motion to suppress. La.C.Cr.P. art. 703 D; See: State v. Hunter, 632 So.2d 786 (La.App. 1st Cir.1993), writ denied, 94-0752 (La.6/17/94), 638 So.2d 1092; State v. Harris, 444 So.2d 257, 260 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1234 (La. 1984). Great weight is afforded to the trial court's determination of a motion to suppress, as it had the opportunity to observe the witnesses and to weigh the credibility of their testimony. State v. Jackson, 31,836 (La.App.2d Cir.03/31/99), 736 So.2d 967; State v. Goodjoint, 30,727 (La.App.2d Cir.6/24/98), 716 So.2d 139.
This court in State v. Raborn, 33,980 (La.App.2d Cir.11/15/00), 771 So.2d 877 summarized the applicable law as follows:
The Fourth Amendment to the U.S. Constitution and Article 1, § 5 of the Louisiana Constitution (1974) protect against unreasonable searches and seizures (footnote omitted) and provide that no such search or seizure may be made except pursuant to a warrant issued upon probable cause supported by oath or affirmation and particularly describing the place to be searched, the person or things to be seized and the lawful purpose or reason for the search.
The primary purpose of the particularity requirement is to prevent wide-ranging general searches by the police. United States v. Leon, 468 U.S. 897, 963, 104 S.Ct. 3405, 3430, 82 L.Ed.2d 677 (1984) (Stevens, J., dissenting); United States v. Bonner, 808 F.2d 864 (1st Cir. 1986), cert. denied, 481 U.S. 1006, 107 S.Ct. 1632, 95 L.Ed.2d 205 (1987); State v. Sterling, 99-2598 (La.04/25/00), 759 So.2d 60. The object of the description in a search warrant is to prevent the search of the wrong premises. State v. Smith, 397 So.2d 1326 (La.1981); State v. Sterling, supra at 63 (Johnson, J., dissenting); State v. Johnson, 534 So.2d 1322 (La.App. 4th Cir.1988).
* * * *
A search conducted under the authority of a search warrant may extend to the entire area covered by the warrant's description. A search warrant authorizing the search of the "premises" at a stated address must reasonably be interpreted to permit a search of the *62 dwelling house, the garage, and any other outbuildings within close proximity of the house proper that one normally associates with and includes within the word "house" or "premises." State v. Kimble, 375 So.2d 924 (La.1979); (Citation omitted); State v. Camp, 459 So.2d 53 (La.App. 2d Cir.1984), writ denied, 462 So.2d 212 (La.1985).
In the federal courts, it is well settled that if a warrant authorizes a search of "premises" at a certain described geographical location, buildings standing on that land may be searched. United States v. Bennett, 170 F.3d 632 (6th Cir.1999); United States v. Earls, 42 F.3d 1321 (10th Cir.1994), cert. denied, 514 U.S. 1085, 115 S.Ct. 1800, 131 L.Ed.2d 727 (1995); United States v. Bonner, supra; United States v. Williams, 687 F.2d 290 (9th Cir.1982).
A controlled buy of a small amount of cocaine from a defendant by a reliable confidential informant gives the police probable cause to secure a warrant for that address. State v. Gant, 93-2895 (La.5/20/94), 637 So.2d 396, rehearing denied, 93-2895 (La.7/01/94), 639 So.2d 1183.
Lincoln's assertion that the search warrant was not introduced into evidence in the trial court is factually inaccurate. At the preliminary examination proceeding held on May 30, 1997, a copy of the search warrant was filed into the record of the proceeding as an exhibit.
It is clear from the record that the search warrant was issued upon a showing of probable cause. Detective Weaver personally witnessed a controlled buy of crack cocaine by a reliable confidential informant from the defendant at his residence, giving Detective Weaver probable cause to secure a warrant for that address. State v. Gant, supra. The record also shows that the search warrant was supported by Detective Weaver's oath, and particularly described the place to be searched, the person or things to be seized and the lawful purpose for the search. The search conducted was of the defendant's person and residence, which was clearly encompassed by the description in the warrant. The items seized included illegal controlled dangerous substances (oxycodone pills) and drug paraphernalia (a set of black weight scales and approximately 50 very small Apple brand "baggies"), all as described in the search warrant. State v. Raborn, supra.
Thus, the search and seizure qualified as an exception to the Fourth Amendment to the U.S. Constitution and Article 1, § 5 of the Louisiana Constitution (1974), which protects against unreasonable searches and seizures. State v. Raborn, supra. This argument is without merit.

Suppression of Search of Storage Building
It is well settled that a warrantless search conducted pursuant to a valid consent is permitted by the Louisiana and United States Constitutions. State v. Ludwig, 423 So.2d 1073 (La.1982); State v. Johnson, 380 So.2d 32 (La.1980). See also: State v. Murphy, 465 So.2d 811 (La.App. 2d Cir.1985). Consent is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. State v. Bodley, 394 So.2d 584 (La.1981); State v. Brown, 32,407 (La.App.2d Cir.9/22/99), 743 So.2d 807; State v. Owens, 480 So.2d 826 (La.App. 2d Cir.1985), writ denied, 486 So.2d 748, cert. denied, 479 U.S. 840, 107 S.Ct. 145, 93 L.Ed.2d 87 (1986). In the context of a premises search, generally consent may be obtained from one having mutual use of the premises. State v. Normandin, 32,927 (La.App.2d Cir.12/22/99), 750 So.2d 321.
*63 Oral consent to search is sufficient to constitute an exception to the warrant and probable cause requirements of the United States and Louisiana Constitutions. State v. Brown, supra; State v. Valrie, 597 So.2d 1218 (La.App. 3d Cir.1992), writ denied, 605 So.2d 1113 (La. 1992), citing State v. Ossey, 446 So.2d 280 (La.1984), cert. denied, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984). Written consent is not required. State v. Ossey, supra; State v. Walker, 530 So.2d 1200 (La.App. 2d Cir.1988), writ denied, 532 So.2d 763 (La.1988). Although a valid consent search is a recognized exception to the warrant requirement, the burden is on the state to prove that the consent was given freely and voluntarily. La.C.Cr.P. art. 703 D; State v. Yarbrough, 418 So.2d 503 (La.1982).
Voluntariness is a question of fact to be determined by the trial court under the facts and circumstances of each case. The trial court's determination is to be given great weight upon appeal. State v. Edwards, 434 So.2d 395 (La.1983); State v. Brown, supra; State v. Bostic, 26,000 (La. App.2d Cir.5/4/94), 637 So.2d 591, writ denied, 94-1476 (La.10/14/94), 643 So.2d 159; State v. Shrader, 593 So.2d 457 (La.App. 2d Cir.1992), writ denied, 598 So.2d 353 (La.1992).
The defendant's sister, Wanda, was living at 1416 Webster Avenue with her mother and father, Mr. and Mrs. Lincoln, and she testified at the hearing on the motion to suppress and at trial. Wanda stated that Mrs. Lincoln was the head of the household. Wanda observed the officers at the defendant's residence and watched the activity. When she saw the officers enter her mother's yard through the gate and walk near the storage building, she told them to get out of her yard and called her mother. According to Wanda, Mrs. Lincoln repeatedly asked the officers to leave, and initially refused to sign the waiver of search warrant form. One of the officers threatened, "Well, if you don't let us search everybody in the house is going to jail." Wanda recalled that her mother later signed the waiver of search warrant form, which was still blank at the time, and asserted that the officers never told them what items were seized.
Wanda testified that the entire house-hold had access to the storage building. The storage building contained her belongings and those of her niece, Kamesha. Her mother went inside the storage building on a daily basis because it contained the washer and dryer. Wanda asserted that the guns in the storage building belonged to her father, who was terminally ill at the time of the search and died sometime before trial. Wanda admitted that she occasionally saw the defendant go in and out of the storage building.
Mrs. Lincoln testified at both the suppression hearing and trial. She stated that her son Bobby also lived in her home at the time of the search. She insisted that the officers told her that everyone in the house would go to jail if she didn't let them search the storage building. She did not recall the waiver of search warrant form being filled out when she signed it, and the officers never advised her of what items were taken. At the suppression hearing, she did acknowledge that the officer read the consent form to her.
Mrs. Lincoln testified that she hardly ever went into the storage room because her washer and dryer were out of order, contradicting Wanda's testimony that Mrs. Lincoln entered the building on a daily basis to do her laundry chores. Everyone in the household, including her grand-daughter Kamesha, Wanda, and both sons, had access to the unlocked storage building. She admitted that the defendant had lived in the storage room in the past although *64 it was a few years before his 1996 arrest. Mrs. Lincoln's other son, Bobby, and one of Bobby's friends also lived in the storage room as recently as a year before the search. Mrs. Lincoln further asserted that her husband had some guns and that he had told her that he put some guns in the storage building.
Contrary to Wanda and Mrs. Lincoln's version of the event, the police testimony was that the search of the storage building was conducted pursuant to the voluntary consent of Mrs. Lincoln. Both Detective Weaver and Officer Cooper testified that Mrs. Lincoln's consent was not coerced and denied making any threats to jail the family. At the hearing on the motion to suppress and at trial, both related that Mrs. Lincoln first gave verbal permission and subsequently signed the written waiver of search warrant form in their presence. Thus, the record supports the conclusion that Mrs. Lincoln gave both oral and written consent to the search, thereby dispensing with the necessity of a search warrant. Also, Detective Weaver stated at the hearing and at trial that Mrs. Lincoln told him that anything in the storage building belonged to the defendant. Mrs. Lincoln denied making such statement in her testimony.
Great weight should be given to the trial court's denial of the motion to suppress, as it had the opportunity to observe the witnesses and to weigh the credibility of their testimony. State v. Myers, 32,777 (La.App. 2d Cir. 12/28/99), 756 So.2d 343. State v. Jackson, supra. Moreover, Mrs. Lincoln's execution of the written waiver of consent form weighs in favor of the trial court's acceptance of the officers' testimony concerning the voluntariness of Mrs. Lincoln's consent.
This argument is also without merit.

Admissibility of Marijuana Evidence
During the trial, the state's forensic chemistry expert, Randall Robillard of the North Louisiana Crime Lab in Shreveport, testified that he performed tests on the evidence seized from Lincoln's residence and the storage building. Before the state asked Robillard to identify the marijuana, the defense objected on the grounds that Lincoln was not charged regarding the marijuana. The trial court allowed the evidence as part of the res gestae of the crime, over the objection. However, the trial court instructed the jury that the defendant was not charged with possession of marijuana, and specifically charged the jury regarding the limited purpose of the introduction of the marijuana evidence.
Lincoln now argues that the admission of evidence of his possession of marijuana confused and prejudiced the jurors. He asserts that this evidence was inadmissible evidence of other crimes under La. C.E. art. 404.[2]
This court in State v. Lewis, 566 So.2d 1120 (La.App. 2d Cir.1990), noted that La. C.E. art. 404(B)(1) incorporates the principles set forth in several former statutes, including La. R.S. 15:446 (admissibility of facts tending to show knowledge or intent) *65 and La. R.S. 15:448 (res gestae). These statutes were repealed effective January 1, 1989, when the Louisiana Code of Evidence became effective. It was observed that the Official Comments to Article 404 demonstrate that the jurisprudence which has arisen under these articles is still valid.
Though generally inadmissible, evidence of other crimes, wrongs or acts may be introduced when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. art. 404(B)(1); State v. Coates, 27,287 (La. App.2d Cir.09/27/95), 661 So.2d 571, writ denied, 95-2613 (La.02/28/96), 668 So.2d 365. In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving the immediate context of happenings near in time and place. State v. Colomb, 98-2813 (La.10/01/99), 747 So.2d 1074. The test of integral act evidence simply is not whether the state might somehow structure its case to avoid any mention of the uncharged act or conduct, but whether doing so would deprive its case of narrative momentum and cohesiveness, with power not only to support conclusions, but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. State v. Colomb, supra, quoting from Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). See also, State v. Constantine, 364 So.2d 1011 (La.1978).
The trial court did not err in admitting evidence regarding the marijuana seized during the search of the defendant's residence. It correctly classified it as admissible as part of the res gestae of the crime, an exception to the general rule that evidence of other crimes are inadmissible. The seizure of marijuana from the defendant's residence was clearly an integral part of Lincoln's transacting narcotic-related dealings at his residence which is the subject of the present proceeding. La. C.E. art. 404(B)(1).
This argument is meritless.

Sufficiency of Evidence of Constructive Possession
The constitutional standard of review for the sufficiency of the evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La. 1984); State v. Morris, 521 So.2d 1214 (La.App. 2d Cir.1988), writ denied, 530 So.2d 80 (La.1988). Jackson is the objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984); State v. Sutton, 436 So.2d 471 (La.1983); State v. Morris, supra. La. R.S. 15:438, which deals with circumstantial evidence, requires exclusion of every reasonable hypothesis of innocence in order to convict. It provides an evidentiary guideline, emphasizes the need for careful observance of the Jackson standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. State v. Morris, supra; State v. Eason, 460 So.2d 1139 (La.App. 2d Cir.1984); writ denied, 463 So.2d 1317 (La.1985).
An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the evidence by viewing that evidence in the light most favorable to the prosecution. In determining sufficiency, an appellate court must review *66 all of the evidence presented at trial, even that which might have been erroneously admitted. When the evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
This court's responsibility when reviewing sufficiency of evidence does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). The critical inquiry is not whether the reviewing judge may believe but instead whether a rational juror could have found that the evidence proved guilt beyond a reasonable doubt. Jackson, supra. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
Constructive possession, in the absence of actual possession, is sufficient to satisfy the possession element. State v. Day, 410 So.2d 741 (La.1982); State v. Washington, 605 So.2d 720 (La.App. 2d Cir.1992), writ denied, 610 So.2d 817 (La. 1993). Constructive possession is demonstrated when the state shows that the firearm or drug was subject to the defendant's dominion and control. State v. Martin, 29,352 (La.App.2d Cir.5/13/97), 694 So.2d 1209 (J. Stewart, dissenting); and State v. Neeley, 30,008 (La.App.2d Cir.12/23/97), 704 So.2d 443 (J. Brown, dissenting). A defendant's dominion and control over a weapon constitutes constructive possession even if it is only temporary in nature and even if the control is shared. State v. Washington, supra, and the cases cited therein.
The test for determining whether intent to distribute a CDS exists in a particular case includes five factors: (1) packaging in a form usually associated with distribution; (2) evidence of other sales or attempted sales by the defendant; (3) a large amount or quantity of the drug such as to create a presumption of intent to distribute; (4) expert or other testimony that the amount found in the defendant's possession was inconsistent with personal use; and (5) the existence of any paraphernalia, such as baggies or scales. State v. Appacrombie, 616 So.2d 285 (La.App. 2d Cir.1993); writ denied, 623 So.2d 1302 (La. 1993); State v. Stanley, 34,437 (La.App.2d Cir.2/28/01), 780 So.2d 1207.
In this case, the State was required to prove that Lincoln was in constructive possession of the assault rifle and the drugs which were found in his mother's storage building. Additionally, as to drug Counts 1 and 3, the evidence must have demonstrated the requisite intent to distribute the drugs.
The circumstantial evidence indicating Lincoln's access to the storage building and his dominion and control of the drugs inside the building was as follows. The storage building was located a short distance from the back of Lincoln's residence. He had complete access to his mother's property and to the storage building. Numerous instances of drug trafficking occurred at Lincoln's residence as attested to by the officers who witnessed the drug transactions and some of the parties arrested in the process. Two of those parties testified that Lincoln entered the storage building to obtain the drugs. The use of scales and Apple brand baggies was evident at both locations. Use of those items for the distribution of drugs together with the large quantity of drugs discovered *67 in the storage building demonstrate Lincoln's intent to distribute. Officer Weaver testified to the prior purchase of crack cocaine occurring at Lincoln's residence and crack cocaine was found in the storage building. Konduros testified regarding his intent to purchase a large quantity of Lortab pills from Lincoln on the night of his arrest and Lortab pills were found in the storage building.
In addition to the circumstantial evidence, the jury received evidence of Mrs. Lincoln's statement to Deputy Weaver that the "stuff" in the storage building belonged to Lincoln. Although Mrs. Lincoln's statement as reported by Officer Weaver is not a specific statement regarding Lincoln's drug or gun possession and could arguably be considered an exculpatory statement on her behalf, the evidence does at least indicate Mrs. Lincoln's admission of her son's significant use of the storage building. Finally, Crew, who was arrested at the scene with Lincoln and later convicted of a drug offense, testified that she had previously been inside the storage building for a prior purchase of narcotics from Lincoln.
Regarding Lincoln's dominion and control of the drugs and the items for drug distribution found in the storage building, the circumstantial evidence and the statements of Mrs. Lincoln and Crew, when viewed in the light most favorable to the prosecution, are sufficient to support the jury's conclusion of constructive possession beyond a reasonable doubt. His convictions of drug Counts 1 and 3 are affirmed.
However, as to Lincoln's constructive possession of the firearm, in order to tie him to such possession, further circumstantial evidence was required in addition to the evidence of Lincoln's drug trafficking at his residence. While the trail of illegal drug contraband extending the short distance from Lincoln's residence to the storage building evidenced Lincoln as the single drug violator residing on the combined Lincoln family properties, legal gun possession by other family members could have occurred since their access to and use of the storage building was established.
Nevertheless, Detective Weaver provided such additional information in his testimony concerning Lincoln's constructive possession of the firearms. From a review of the serial numbers for the three guns, Detective Weaver established that the Chinese-made assault rifle was a stolen weapon. The assault rifle and other guns were hidden under a couch in the storage building and behind that couch, the 2,241 Lortab pills were also hidden. From this additional evidence, the jury could infer that the Chinese assault rifle was utilized in connection with the illegal drug operation being conducted in the storage building and that such weapon was not simply being stored in the building by Lincoln's father for his private use. Accordingly, we find that there was sufficient evidence to establish Lincoln's constructive possession of all items of illegal contraband found in the storage building and his assignment of error is denied.

Conclusion
For the foregoing reasons, defendant's convictions and sentences are affirmed.
AFFIRMED.
STEWART, J., concurs in part and dissents in part with written reasons.
STEWART, J., concurring in part and dissenting in part,
I concur with the majority's conclusion to affirm of the defendant's convictions on Counts 1-3. However, I submit that the state failed to meet its burden of proof as to Count 4knowingly and intentionally possessing an automatic rifle as a convicted *68 felon in violation of La. R.S. 14:95.1. Thus, I must respectfully dissent.
The finding that the defendant was in constructive possession of the AK-47 was in error. The majority correctly notes that constructive possession is demonstrated when the state shows that the firearm or drug was subject to the defendant's dominion and control. State v. Martin, 29,352 (La.App. 2nd Cir.5/13/97), 694 So.2d 1209 (J. Stewart, dissenting). However, the majority cites nothing from the record that supports its finding that the defendant had dominion and control over the guns. In fact, the witness testimony adduced at trial only served to draw a clear link between the defendant and the drugs, but no testimony linked him to the guns. Moreover, the defendant's sister, Wanda McGlothen, testified that all of the guns in the storage house belonged to their father who was ill at the time of the search and died prior to the trial. The majority relies on suggestion or innuendo rather than substantive evidence to sustain the defendant's conviction of illegal possession of a firearm by a convicted felon. The testimony shows that several individuals had access to the storage shed. The mere fact that guns were found in a storage shed to which the defendant had access is not sufficient to support a conviction without any corroborating evidence.
As a result, I would reverse the defendant's conviction of possession of a firearm by a convicted felon.
NOTES
[1] Two other assignments of error raising the sufficiency of evidence for the conviction for the drugs found in defendant's residence and contesting the trial court's refusal to grant a mistrial are not briefed or argued by defendant and are considered abandoned. U.R.C.A. Rule 2-12.4.
[2] La. C.E. art. 404 provides, in pertinent part:

B. Other crimes, wrongs, or acts.
(1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.